714 F.2d 556
 32 Fair Empl.Prac.Cas. (BNA) 1451,
32 Empl. Prac. Dec. P 33,813
Jack ELLIOTT, et al., Plaintiffs-Appellees-Cross Appellants,
v.
GROUP MEDICAL & SURGICAL SERVICE, et al., Defendants,
Group Hospital Service, Inc., Defendant-Appellant-Cross Appellee.
 Nos. 81-2356, 82-2235.
 United States Court of Appeals,
Fifth Circuit.
 Sept. 16, 1983.
 
 Seay, Gwinn, Crawford, Mebus & Blakeney, John F. McCarthy, Jr., Jerry K. Warren, Dallas, Tex., for defendants.
 Mandell & Wright, Eliot P. Tucker, Houston, Tex., for plaintiffs-appellees-cross appellants.
 John F. McCarthy, Jr., Jerry K. Warren, Dallas, Tex., for defendant-appellant-cross appellee.
 Appeal from the United States District Court for the Southern District of Texas.
 Before THORNBERRY, GEE and REAVLEY, Circuit Judges.
 GEE, Circuit Judge:
 
 
 1
 The Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq. ("ADEA"), was enacted on December 15, 1967 (effective June 12, 1968), following the completion of a study by the Secretary of Labor required by Congress when it enacted the Civil Rights Act of 1964.[1] The ADEA's announced goal is the "elimination of discrimination from the workplace," Lorillard v. Pons, 434 U.S. 575, 577, 98 S.Ct. 866, 868, 55 L.Ed.2d 40 (1978), by "[p]romoting employment of older persons based on their ability rather than age ... [and] prohibit[ing] arbitrary age discrimination in employment." 29 U.S.C. § 621(b). To this end, the ADEA provides statutory protection to individuals aged forty through seventy. Id., § 631(a). This appeal concerns a suit brought pursuant to the ADEA by six protected former employees (collectively referred to as "appellees") of Group Hospital Service, Inc. ("Hospital Service"), appellant. In the district court, the jury found, inter alia, that these former employees had been willfully discriminated against because of age. Concluding that the evidence adduced at trial was insufficient to support the jury's verdict, we reverse the judgment of the district court.
 
 Background and Procedural History
 
 2
 Two major contentions are before us. The first concerns the sufficiency of the evidence to support the jury's finding of age discrimination and certain attendant procedural issues. The second centers upon the propriety of a prophylactic order of the district court. The district court denied appellees' motion for liquidated damages. However, it granted a motion for a supersedeas bond to protect appellees' interest in the event this court determined that that ruling was in error.[2]
 
 
 3
 Because the procedural posture of the present action is somewhat complicated and because our resolution of the procedural issues guides our analysis, we delineate the facts as developed below with some care. The record reflects that sometime during April of 1978 Walter Hachmeister learned that he was president-elect of Hospital Service, an insurance company incorporated under the laws of Texas and doing business as Blue Cross-Blue Shield of Texas.[3] In preparation for his role as president Hachmeister began to assemble a management team and to review the company's past performance.[4] Hachmeister's analysis concluded that Hospital Service could increase both the efficiency of its sales operations and its market penetration by consolidating its Life and Marketing Divisions so as to eliminate overlapping in their respective sales functions. In consequence, Hachmeister implemented a plan to accomplish this goal upon assuming the presidency.
 
 
 4
 Under this reorganization a number of top executives in the Marketing Division were purged: (1) Richard Galen was replaced as an Assistant Vice President; (2) George Spradley was relieved of his duties as Manager of National Accounts; (3) Robert Heffer was replaced as Houston North District Manager; (4) Duane Thompson was replaced as Sales Training Director; and (5) Jack Elliott was ousted as Regional Sales Manager for the Houston Region. In addition, subsequent to the reorganization, Max Tipton was replaced as Manager of the Abilene Regional Office.[5] Each of the above-mentioned executives were within the ADEA's protected age group. More, each, with the exception of Tipton, was either given notice of termination or terminated between October 1978 and January 1979,[6] and filed notice pursuant to 29 U.S.C. § 626(d) with the Department of Labor of his intent to sue Hospital Service, Group Medical and Surgical Service, and Group Life and Health Company. Tipton filed a corresponding notice on June 29, 1979. On October 22, 1979, these former employees, acting in concert, filed suit in the United States District Court for the Southern District of Texas. The gravamen of their complaint was that they had been willfully discriminated against because of age.
 
 
 5
 The defendant companies answered that appellees were indeed terminated and that they were within the ADEA's protected age group at the time of their termination. In addition to conceding that appellees had been replaced by persons outside of the ADEA's protected age group, they urged that Group Medical and Surgical Service and Group Life and Health Company were improperly joined as party defendants. At the close of appellees' case in chief, the district court instructed a verdict as to all defendants except Hospital Service. Hospital Service, in turn, moved to dismiss the claims of Elliott, Galen and Heffer for failure "to fulfill the jurisdictional prerequisites required to maintain an action under the provisions of the Age Discrimination in Employment Act of 1967." See Fed.R.Civ.P. 12(b)(6). In sum, Hospital Service urged that the district court did not have jurisdiction to entertain the complaints of these parties because they had failed to file a notice of intent to sue within 180 days after the occurrence of the discriminatory action complained of. See 29 U.S.C. § 626(d)(1). Appellant also argued that plaintiffs Galen, Tipton and Spradley had failed to establish a prima facie case. See Price v. Maryland Casualty Co., 561 F.2d 609 (5th Cir.1977). The district court carried the former motion with the case and denied the latter.
 
 
 6
 At the close of its case in chief, Hospital Service proffered the following motion: "to dismiss on the grounds that plaintiff failed to make a prima facie case."[7] The district court permitted the case to go to the jury. In response to special issues, the jury found that Hospital Service had discriminated against each of the named plaintiffs by discharging him from his employment because of his age and that the discharges were willful. The jury awarded damages aggregating over one million dollars to the plaintiffs in amounts for which the district court subsequently entered final judgment, adding attorneys' fees and costs. As noted above, the district court declined to award liquidated damages despite the jury's finding of willfullness. Both parties appealed, Hospital Service from the adverse judgment, asserting evidentiary insufficiency; appellees from the refusal of the court to award liquidated damages, claiming a legal right to additional liquidated damages in an amount equal to the jury's damage award. See note 2, supra.
 
 
 7
 On motion, the district court entered a Stay Order pending appeal, on condition that Hospital Service post security in an amount equal to the award. Subsequent to this order plaintiffs moved the district court to require additional security, contending that more was necessary in order to satisfy the potential judgment on appeal should we determine that an award of liquidated damages was required. The district court entered an order granting the motion and required appellant to post additional security.
 
 Procedural Issues
 
 8
 A. Motion for Directed Verdict?
 
 
 9
 Our threshold consideration concerns which issues have been preserved on appeal. If, as appellees suggest, appellant's motion at the conclusion of all the evidence did not constitute a motion for directed verdict then we are precluded from considering Hospital Service's request for a reversal of the district court's judgment. See Thomas v. City of New Orleans, 687 F.2d 80, 83 (5th Cir.1982). Initially, appellees' briefs urged that Hospital Service's motion "preserves no error because it refers to only one plaintiff and because it fails to specify which plaintiff defendant contends failed to prove a prima facie case." In this connection appellees also advanced the ancillary argument that the motion lacked the required specificity to be properly considered a motion for directed verdict. See Fed.R.Civ.P. 50(a). In the alternative, appellees contended that at most Hospital Service's motion preserved only the motion made at the close of appellees' case in chief--that Galen, Tipton and Spradley failed to prove a prima facie case. This argument suggests that our analysis is confined to an examination of whether a prima facie case was in fact established and no more.
 
 
 10
 Upon reflection appellees concede, and we agree, that appellant's reference to a single plaintiff was no more than a slip of the tongue in the heat of trial and that the intended object of the motion was the entire opposing array. Appellees insist, however, that this concession does not vitiate their argument that Hospital Service is barred from questioning the sufficiency of the evidence in this court because its motion for dismissal for want of a prima facie case does not rise to the specificity required of a motion for directed verdict, its motion for judgment n.o.v. notwithstanding. See Maxey v. Freightliner Corp., 665 F.2d 1367 (5th Cir.1982). More, appellees maintain their stance that in any event our analysis is confined to whether the elements of a prima facie case are present and no more.
 
 
 11
 The law in this circuit, as generally elsewhere, is that "the sufficiency of the evidence supporting a jury verdict is not reviewable on appeal ... unless a motion for directed verdict was made at the close of all the evidence by the party seeking that review." Quinn v. Southwest Wood Products, Inc., 597 F.2d 1018, 1024 (5th Cir.1979). As we noted in Quinn, however, the strict application of this rule gives way to considerations of policy and fundamental fairness:
 
 
 12
 When a claimed deficiency in the evidence is called to the attention of the trial judge and of counsel before the jury has commenced deliberations, counsel still may do whatever can be done to mend his case. But if the court and counsel learn of such a claim for the first time after verdict, both are ambushed and nothing can be done except by way of a complete new trial. It is contrary to the spirit of our procedures to permit counsel to be sandbagged by such tactics or the trial court to be so put in error.
 
 
 13
 The rule is a strict one, however, and we and other courts have taken a liberal view of what constitutes a motion for directed verdict for these purposes. There is much to be said for the view that whenever a party, at the conclusion of the evidence and before the jury has begun to deliberate, clearly points out a claimed evidentiary deficiency to court and counsel, not by way of conversation or speculation but on the record in an unambiguous formal motion for relief, however denominated, this should suffice. To hold otherwise would be to succumb to a nominalism and a rigid trial scenario as equally at variance as ambush with the spirit of our rules.
 
 
 14
 597 F.2d at 1025 (footnote omitted) (emphasis supplied). See also C. Wright & A. Miller, Federal Practice and Procedure: Civil § 2536, p. 594. Applying these notions to the present case impels the conclusion that appellant's motion at the close of all the evidence should be read as a motion for a directed verdict. We reach this determination through a series of questions whose answers we find grounded in reason.
 
 
 15
 In age discrimination cases the relevant inquiry is whether the plaintiff has produced evidence from which a trier of fact might reasonably conclude that the employer intended to discriminate in reaching the decision at issue. In order to establish a prima facie case the discharged employee, generally, must prove he (1) is within the protected class; (2) was discharged; (3) was qualified for the position; (4) was replaced by someone outside the protected class, Price v. Maryland Casualty Co., 561 F.2d 609 (5th Cir.1977); or (5) by someone younger, Wilson v. Sealtest Foods, 501 F.2d 84 (5th Cir.1974); or (6) show otherwise that his discharge was because of his age, McCuen v. Home Insurance Co., 633 F.2d 1150 (5th Cir.1981). Thus the elements of such a prima facie case come to little more than establishing the standing requirements of the ADEA and blunting the defendant's probable rejoinder that the plaintiff has not been discriminated against. See Williams v. General Motors, Inc., 656 F.2d 120 (5th Cir.1981); McCorstin v. United States Steel Corp., 621 F.2d 749 (5th Cir.1980).
 
 
 16
 In contrast, when such a motion comes at the conclusion of all the evidence and the defendant has put forth evidence in rebuttal, logic indicates that the motion must speak to more. In this instance, the defendant mounted a factual attack against the plaintiffs' case, its resolution requiring a review of plaintiffs' evidence as compared to that presented by the defendant and a determination whether the evidence was such that reasonable men could come to but one conclusion. We believe that this analysis is equivalent in all respects to that required when considering a motion for directed verdict. See Hedrick v. Hercules, 658 F.2d 1088, 1089 (5th Cir.1981). This being so, the action called for by defendant's motion, even if restricted to its terms, would be the same as that on motion for directed verdict and there is no unfairness in viewing it as such. So doing, we hold that the motion relates back to those motions raised at the conclusion of plaintiff's case in chief and thus preserves appellant's right to challenge both the sufficiency of the evidence supporting the jury's verdict as to all the appellees and the timeliness-of-filing issues relating to appellees Elliott, Galen and Heffer. See Dawson v. McWilliams, 146 F.2d 38 (5th Cir.1944).
 
 B. Filing of Notice of Intent to Sue
 
 17
 Because we arrive by differing routes at the conclusion that appellees Elliott, Galen and Heffer timely filed notice of their intent to sue, we treat the issues separately.
 
 
 18
 (1) Galen and Elliott
 
 
 19
 The precise issue presented here is whether appellees Galen and Elliott were required to file notice of intent to sue within 180 days of notice of their terminations or whether the time of filing commenced to run only after a total cessation of their employment. If the former standard be applicable, it follows that the June 25, 1979, filing is time barred, since appellees raise no substantial claim that the filing was tolled. See Zipes v. Trans World Airlines, 455 U.S. 385, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982). The record reflects that both Galen and Elliott were presented with "Cessation of Employment Agreements," Galen on October 6th and Elliott on October 10th. See note 6, supra. These agreements provided that appellees' employment would end ninety days after the presentation of the agreement and that each would receive full salary and benefits during the interim. Hospital Service contends that under prevailing case law Galen and Elliott were required to file charges of age discrimination within 180 days of the dates on which they were advised of their prospective terminations. To this end, appellant cites Chardon v. Fernandos, 454 U.S. 6, 102 S.Ct. 28, 70 L.Ed.2d 6 (1981), and Delaware State College v. Ricks, 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980). Though Ricks and Chardon establish that the date of notice of termination, rather than the final date of employment, is the operative date from which the 180 day filing requirement begins to run, see Marshall v. Kimberley Clark Corp., 625 F.2d 1300 (5th Cir.1980); Payne v. Crane Co., 560 F.2d 198 (5th Cir.1977), they do not govern this case.
 
 
 20
 As a general proposition, new judge-made rules on limitations are not to be applied retroactively to a plaintiff who timely filed his complaint under the then existing law of limitations. Chevron Oil Company v. Huson, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971). Because the record reflects that the present action was filed before the Supreme Court's decision in either Ricks or Chardon, we believe the above principle to be applicable here. Accordingly, we must determine the state of the law of this circuit before Ricks and Chardon.
 
 
 21
 Our standard had been that "when the employer, by acts or words, shows a clear intention to dispense with the services of an employee, a discharge occurs at the latest as of the date after which the services are no longer accepted." Payne, supra, at 199. This standard focused upon the economic realities of the employment relationship rather than any formal agreement. More, we cast the determination of when the employment relationship ceased as a question of fact. Marshall v. Kimberley Clark Corp., supra, is illustrative of the above points. There we concluded that summary judgment for an employer was improper where the evidence did not clearly establish when the employee's "on call" status had terminated, notwithstanding that the employee had earlier received prior unambiguous notice of his impending termination. 625 F.2d at 1302. Such was our law. The record before us reflects that Galen and Elliott were on call and responded to requests during the interim period of their employment. The jury, aware of the competing arguments, determined as fact that appellees' employment ended on the final date of the cessation agreements. We are unable to say that reasonable men could not reach that conclusion.
 
 
 22
 (2) Heffer
 
 
 23
 Whether Mr. Heffer timely filed notice of intent to sue was examined both by the trial court in disposing of appellant's motion for summary judgment and by the jury as a special interrogatory. Both concluded that Heffer's notice of intent to sue had been timely filed. We agree. Section 627 of the ADEA requires employers to post information setting forth their employees' rights under the ADEA. See 29 U.S.C. § 627; 29 C.F.R. § 850.10.[8] In Charlier v. S.C. Johnson & Son, Inc., 556 F.2d 761 (5th Cir.1977), we held that an employer's failure to comply with section 627 vitiates the normal assumption that an employee is aware of his rights under the ADEA. Id. at 765. In consequence, under such circumstances the ADEA's 180-day filing period is not measured from the employee's cessation of employment, but rather from when he acquired actual knowledge of his ADEA rights, usually a fact question. Id. In disposing of appellant's motion for summary judgment the district court concluded that Hospital Service failed to post the required ADEA notice at Heffer's place of employment and that Heffer had filed a notice of intent to sue within 180 days of acquiring actual notice of his rights. In reaching this conclusion the district court rejected Hospital Service's claim that Heffer possessed constructive notice of his ADEA rights either by virtue of his exposure to company policy due to his seniority or as a consequence of having visited other company offices where such a notice was posted. See Adams v. Federal Signal Corporation, 559 F.2d 433 (5th Cir.1977). Obviously the jury also chose to disregard appellant's theory of constructive notice.
 
 
 24
 Appellant insists that substantial evidence supports its position that Heffer was aware of his ADEA rights before his discharge. It is not, however, our province to substitute our view of the truth for that of the jury. Rather, our task is to examine the evidence in its entirety to determine whether it reasonably supports the jury's verdict. See Boeing Co. v. Shipman, 411 F.2d 365, 374 (5th Cir.1974).
 
 
 25
 The record reflects that there was no section 627 notice posted at Heffer's place of employment. It also reflects that there was a genuine factual dispute as to whether Heffer or some other manager had been charged with the responsibility of posting the notice on the company's behalf. More, whether Heffer possessed knowledge of the company's alleged policy against age discrimination was the subject of a classic swearing match. The jury believed Heffer; there it ends.
 
 
 26
 Having determined that we may properly examine the merits of the case, we now turn to them.
 
 Sufficiency of the Evidence
 
 27
 As the Supreme Court has recently reminded us, the ultimate issue of fact in cases such as this--whether the defendant intentionally discriminated against one or more of the plaintiffs--is to be reviewed under the same standards as those in other cases. United States Postal Service Board of Governors v. Aikens, --- U.S. ----, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983). Where, as here, the case has been fully tried on the merits, the adequacy of a party's showing at any particular stage of the McDonnell Douglas ritual[9] is of no consequence. We are simply to determine whether the record contains evidence upon the basis of which a reasonable trier of fact could have concluded as the jury did. New England Merchants National Bank v. Rosenfield, 679 F.2d 467 (5th Cir.1983). Self-serving and speculative testimony is subject to especially searching scrutiny. Id.; Ralston Purina Co. v. Hobson, 554 F.2d 725 (5th Cir.1977). More specifically on point, we have recognized that generalized testimony by an employee regarding his subjective belief that his discharge was the result of age discrimination is insufficient to make an issue for the jury in the face of proof showing an adequate, nondiscriminatory reason for his discharge. Houser v. Sears, Roebuck & Co., 627 F.2d 756 (5th Cir.1980).[10] Bearing these principles in mind, we turn to the evidence in our case.
 
 
 28
 The parties have followed generally the McDonnell Douglas format, described in note 9 above, in presenting their evidence below and their arguments on appeal. There is no direct evidence of age discrimination, and that format is one way of presenting a circumstantial evidence case. Since they have done so, it is necessary for us to discuss the elements of that format even though our concern is not with the state of the evidence at any of its stages, but rather with the evidence in the case at large. United States Postal Service Board of Governors v. Aikens, supra.
 
 
 29
 According to the teaching of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) and its progeny,[11] in order to establish a prima facie case of age discrimination a plaintiff must prove that he (1) was discharged; (2) was qualified for the position; (3) was within the protected class at the time of discharge; (4) was replaced by someone outside the protected class, or (5) by someone younger, or (6) show otherwise that his discharge was because of his age. See page 7264, supra.
 
 
 30
 At the outset we note that with the exception of appellee Spradley there exists no dispute as to whether appellees are qualified to perform their individual tasks. We therefore examine the evidence without consideration of this factor, leaving Spradley's qualifications for discussion below. First, appellees introduced evidence that Hachmeister stated that he wanted "new blood" in the Marketing Division and a new "lean and mean" team. Extrapolating from this statement, appellees surmised during their individual testimony that it was Hospital Service's policy to terminate older workers because a "lean and mean" team necessarily excluded them. To buttress this inference, appellees established that all six appellees were terminated, that all were over forty, and that all but Tipton were replaced by men under forty. Those fired averaged 49.5 years, their replacements 36.5. In addition, appellees asserted that four persons other than appellees were terminated during the reorganization period and that each was over forty. An expert witness called by the appellant, Dr. William Schucany, a statistician, testified however that his analysis of the ages of those fired during the relevant period, as compared to the age of their replacements and to the ages of those occupying similar positions in the company, established only that age could neither be ruled in nor ruled out statistically as the factor leading to the discharges.[12] On the basis of this evidence, appellees contend that the most likely reason for their discharges was age in each instance. Appellant Group Hospital contends to the contrary that each discharge resulted from a corporate reorganization designed to increase management efficiency. It introduced evidence that the reason for Galen's discharge was a perceived disloyalty because he had sought to undercut his immediate superior, approaching Hachmeister with a "resume" of things to be accomplished were he to succeed that superior. Elliott was fired, it contends, because his region had not achieved the company's desired market penetration or productivity, the undisputed fact being that the market penetration there (in Houston) was approximately five to six percent, as compared to the company's state-wide market penetration of twenty percent. As to the others, its contentions are as follows: Owens was terminated because it was believed that he did not have the necessary inner drive to lead his region and that his replacement would do a better job. The record reflects that during the three years preceding Spradley's termination he had been transferred into and out of a total of four different positions, with the final transfer, Manager of National Accounts, being a decided demotion. Appellant urges that Spradley simply lacked the personality to deal with others in managerial positions and had demonstrated that he did not have the capabilities or desire to be Manager of National Accounts. Thompson was dismissed because he had not developed a sales training program. The record reflects, and Thompson conceded, that the sales training program had "really been neglected," but that he "was going to recommend changes" to "revitalize the program." The reason stated for Tipton's termination was that he had violated company policy by having a contractor who was remodeling his new regional offices leave out a wall, producing the twin effect of enlarging his personal office beyond the square footage permitted by the company for an officer of his rank and eliminating the employees' lounge.
 
 
 31
 It cannot be said that any of these reasons is irrational or idiosyncratic. To the contrary, each is, on its face, an adequate, nondiscriminatory one. See International Brotherhood of Teamsters v. United States, 431 U.S. 324, 360 n. 46, 97 S.Ct. 1843, 1867 n. 46, 52 L.Ed.2d 396 (1977). Once such a reason for discharge is articulated by adequate evidence, the plaintiff's established prima facie case is not necessarily sufficient to take the case to the jury. Reeves v. General Foods Corp., 682 F.2d 515, 521-23 (5th Cir.1982). When no more evidence of discrimination is presented than that of these plaintiffs and the defendant presents evidence justifying and explaining the discharge, the trier of fact is not free to disregard that explanation without countervailing evidence that it was not the real reason for the discharge. Such evidence may take the form of an attempted showing that the reason given by the employer, though facially adequate, was untrue as a matter of fact or was, although true, a mere cover or pretext.
 
 
 32
 Appellees offered no more than conclusionary statements of age discrimination. On cross-examination each admitted that he was never told that age was a factor in his discharge. When questioned directly concerning the company's stated reasons for his dismissal, none seriously disputed either his awareness of or the objective truth of the company's stated ground of dissatisfaction with him, maintaining only that it was inadequate to warrant his termination. Within certain limits, however, not exceeded here, such judgments as that are for the employer, not for the court. As we have noted, the statistical evidence was equivocal. Pretext was not made out, nor could reasonable jurors properly have concluded that it was.
 
 
 33
 McDonnell Douglas is not a vehicle that permits a plaintiff to cast the burden of persuasion on the defendant and compel him to prove that his actions were nondiscriminatory. See Board of Trustees of Keene State College v. Sweeney 439 U.S. 24, 99 S.Ct. 295, 58 L.Ed.2d 216 (1978). Nor is it a device which permits the jury to examine an employer's reasons for discharge and determine that the employer's business judgment or policies do not appeal to its sensibilities. The inquiry is whether the plaintiff has been discriminated against because of his age; the ADEA proscribes no other conduct.
 
 
 34
 The record in this case establishes that the plaintiff-appellees were in the ADEA's protected age group, that most were qualified, and that they were terminated and (except for one) replaced by younger employees. It carries the plaintiffs no further. Group Hospital offered an adequate ground other than age for the discharge of each. In rebuttal, each appellee advanced little if anything more than his belief that age caused his discharge rather than the reason given by the employer. We are not prepared to hold that a subjective belief of discrimination, however genuine, can be the basis of judicial relief. See Houser v. Sears, Roebuck & Co., 627 F.2d 756 (5th Cir.1980). Nor are we prepared to lay it down that because an employee is performing his job adequately, an employer is prohibited from replacing him with one whom he subjectively believes will do a better job. Were we to do so, we would go far to insure that an employer could do nothing to correct unsatisfactory performance in senior management, most of which will always be within the ADEA's protection. Even had the reasons articulated here been frivolous or capricious, had they been the genuine causes of these discharges they would have defeated liability under the ADEA. We reiterate: that statute proscribes only one reason for discharge--age. One who offers a frivolous or capricious reason, however, does so at heavy risk that it will be discounted. Conversely where, as here, the reasons articulated are rational ones, the objective truth of which is not seriously disputed, the burden of establishing them as pretextual is a heavy one indeed. As we have heretofore held in Houser, supra, it is not discharged by general avowals of belief, however sincere, that age--rather than an established adequate reason--was the real reason for the termination. More is required, perhaps a successful statistical demonstration by expert testimony, perhaps proof that others similarly situated were not discharged. Such proof is lacking here; and as to this, the verdict lacks rational support in the record. Since it does, and since the element of pretext was critical, the verdict cannot stand.
 
 
 35
 Because we hold that the evidence was insufficient to support the jury's finding of age discrimination we need not address the issues of attorneys' fees, liquidated damages or the supersedeas bond. We leave it to the district court to fashion a decision consistent with this opinion.
 
 
 36
 Accordingly, the judgment of the district court is reversed and the cause remanded.
 
 
 37
 REVERSED and REMANDED.
 
 
 
 [1]
 Age discrimination was at first included in draft legislation which was to become Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. (1976), but later deleted in favor of a study. Subsequent to the completion of the study, Congress lifted the substantive provisions of Title VII almost verbatim in drafting the ADEA. In consequence, courts have construed the two sets of legislation consistently and cases from one are frequently applied to similar cases under the other. See generally Note, The Age Discrimination in Employment Act of 1967, 90 Harv.L.Rev. 380 (1976). More, in Oscar Mayer & Co. v. Evans, 441 U.S. 750, 756, 99 S.Ct. 2066, 2071, 60 L.Ed.2d 609 (1979), the Court instructed that where the source of a section in the ADEA parallels Title VII the two statutes are to be construed consistently
 
 
 [2]
 The ADEA provides that "liquidated damages shall be payable only in cases of willful violations of this chapter." 29 U.S.C. § 626(b). See id. § 216(b) (defining liquidated damages). Within this circuit the above constraint has been construed as permissive. Hence if, after a jury finding of willfulness, the trial court makes a finding that the employer acted in good faith and had reasonable grounds for believing that its actions were not violative of the ADEA, the trial court possesses the discretion to determine the amount, if any, of a liquidated damages award. See Hendrick v. Hercules, Inc., 658 F.2d 1088 (5th Cir.1981); Hays v. Republic Steel Corp., 531 F.2d 1307 (5th Cir.1976). The trial court here, despite the jury's specific finding of willfullness, declined to award liquidated damages. Appellees contend that our permissive approach to liquidated damages runs counter to both the policy and underlying legislative history of the ADEA and urges that we join those circuits that have held that upon a finding of willfullness, liquidated damages in the amount of actual damages must be awarded. See Loeb v. Textron, Inc., 600 F.2d 1003 (1st Cir.1979); Goodman v. Heublein, Inc., 645 F.2d 127 (2d Cir.1981); Wehr v. Burroughs, Inc., 619 F.2d 276 (3d Cir.1980); Syrock v. Milwaukee Boiler Mfg. Co., 27 F.E.P. 610 (7th Cir.1981); Kelly v. American Standard, Inc., 640 F.2d 974 (9th Cir.1981). In the alternative, appellees argue that because of the specific finding that Hospital Service willfully violated the ADEA and because the district court declined to award liquidated damages without making factual findings of good faith, on the record, we must remand for such a determination. Hendrick, supra, is cited as support for this legal theory. In light of the ultimate disposition of the present case we must decline appellees' offering. Accordingly, we express no view as to whether Hendrick requires a trial court to enter its factual findings on the record in order to support its discretion in this area. Nor do we believe the present facts warrant an inquiry into our established approach to liquidated damage awards
 
 
 [3]
 Our understanding of the record indicates that Hachmeister was president-elect of Hospital Service. In turn Hospital Service is the parent organization of Group Medical and Surgical Service and Group Life and Health Company. Collectively these entities do business in Texas under the name Blue Cross-Blue Shield of Texas and enjoy an independent yet advisory relationship with other Blue Cross-Blue Shield plans
 
 
 [4]
 The line managerial hierarchy of the marketing division in descending order is as follows: Vice President, Assistant Vice President, Regional Sales Manager I, Regional Sales Manager II, Regional Sales Manager III and District Manager. Director of Sales Training and Manager of National Accounts appear not to be considered line functions and report directly to the Vice President. In total the above titles represent approximately 29 persons, all with a significant degree of managerial authority. Appellees make much of Hachmeister's consultations with two regional managers, individuals obviously within the managerial chain of command and vested with organizational responsibility. We find nothing invidious in such a consultation where the sole charge is that they were younger than the employees discharged. In fact, appellees concede that these particular managers were extremely bright and capable
 
 
 [5]
 At trial Tipton stipulated that his discharge was not a part of the corporate reorganization and that he was terminated for insubordination in the form of changing the structural plans of the Abilene Regional Office to effectively give himself an office that was twice as large as approved by company policy. At trial Tipton urged that he sought and received approval for this action. We note that appellee's co-defendant, Galen, was his immediate supervisor and did not remember approving this action
 
 
 [6]
 Appellant urges in this appeal that appellees Elliott and Galen did not timely file a notice of intent to sue because each had constructive notice of his termination prior to the final day of employment by virtue of a Cessation of Employment Agreement. The agreement between Elliott and the company is presented here by way of example; the Galen agreement is substantially the same:
 As mutually agreed, effective October 9, 1978 your responsibilities and authority as Regional Sales Manager C of our companies will cease. This action does not cease your employment with Group Hospital Service, Inc., and you may continue your employment for up to three months from the date of this agreement.
 During your continued employment, it is agreed:
 
 
 [1]
 You will earnestly solicit other gainful employment during this three-month period, and should you find other gainful employment during this three-month period, your employment with Group Hospital Service, Inc., will cease on the last day of the pay period in which you commence your other gainful employment. Determination of what constitutes "other gainful employment" shall be made by Group Hospital Service, Inc
 
 
 [2]
 Due to the circumstances, attendance in our offices and regular working hours will not be expected during your continued employment with Group Hospital Service, Inc. You will be available for inquiries by Group Hospital Service, Inc., and will respond in good faith and to the best of your abilities to any such inquiry
 
 
 [3]
 You will return all company property on the date of this agreement and your status as a required company car user ceases on the date of this agreement
 
 
 [4]
 All other employee benefits will continue during your continued employment and your salary at its present level will be paid at the end of each pay period in accordance with present salary administration policy
 
 
 [5]
 This document constitutes the complete agreement concerning your cessation of employment with Group Hospital Service, Inc
 
 
 [7]
 Apparently there was some confusion at the close of all the evidence and the court reporter neglected to transcribe appellant's motion at the time it was made. The following affidavit reflects our understanding of the circumstances surrounding appellant's motion:
 AFFIDAVIT
 COMES NOW Ernie J. Ambort, Jr., and gives the following sworn Affidavit:
 I.
 THAT I reside at 16330 David Glen, Friendswood, Harris County, Texas; that I can be reached by telephone at (713) 482-0970.
 II.
 THAT presently I am self-employed as a freelance court reporter in Houston, Texas. THAT at all times material to this Affidavit I was employed as a court reporter for the United States District Court for the Southern District of Texas, Houston Division.
 III.
 THAT I was the court reporter for the case of Jack Elliott, et al vs. Group Hospital Service, Inc., et al; Civil Action No. H-79-2179 tried in July, 1981 before the Honorable George E. Cire, United States District Judge. THAT I have caused to be filed an official transcript of said trial with the United States Court of Appeals, Fifth Circuit.
 IV.
 THAT the transcript of said trial proceedings as filed does not reflect that the attorney representing the defendant made a motion that the defendant after the close of all of the evidence renewed its motion made at the close of the Plaintiff's case to dismiss on the grounds that the Plaintiff failed to make a prima facie case.
 V.
 THAT I have this day checked my court reporting notes of the trial and those notes do not contain defendant's motion to dismiss made at the close of all of the evidence. It is at this time my recollection within the Chambers of the Court at a time when my shorthand machine was in the courtroom that I was instructed by the Court before the Charge of the Court was read to the jury to let the record show that the defendant reurged at the close of all of the evidence its motion to dismiss made at the close of the Plaintiff's case on the grounds that the Plaintiff did not make a prima facie case and that such motion was overruled; and that I failed to properly record the same on my shorthand machine when I returned into the courtroom as instructed.
 
 
 [8]
 29 C.F.R. § 850.10, promulgated pursuant to section 627, provides:
 Every employer, employment agency, and labor organization which has an obligation under the Age Discrimination in Employment Act of 1967 shall post and keep posted in conspicuous places upon its premises the notice pertaining to the applicability of the Act prescribed by the Secretary of Labor or his authorized representative. Such a notice must be posted in prominent and accessible places where it can readily be observed by employees, applicants for employment and union members.
 
 
 [9]
 This is one of the modes of organizing the evidence in discrimination cases. By it, the plaintiff must first establish a prima facie case, thus creating a rebuttable presumption that he has suffered discrimination. If the evidence ends here, the plaintiff should prevail by directed verdict. The defendant may avoid that result by introducing evidence that he acted for a nondiscriminatory reason, which the plaintiff may then attack as pretextual. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). The plaintiff retains the burden of persuasion on the whole case. Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 256, 101 S.Ct. 1089, 1095, 67 L.Ed.2d 207 (1981)
 
 
 [10]
 Mr. Houser, an exceptionally able and hard-working credit manager, was fired at age 54 after almost 20 years service and replaced by a 29 year old. The defendant asserted that the reason for his discharge was a single incident in which he deliberately misapplied a credit, believing that doing so was in his employer's best interest. Despite Houser's testimony that the real reason for his discharge was to replace him with a less-senior employee not entitled, as was he, to participate in Sears' highest profit-sharing plan, we affirmed a directed verdict for Sears
 
 
 [11]
 We recognize that McDonnell Douglas, supra, involves a Title VII action. However, the analysis of Title VII cases has been applied to ADEA cases given the common purpose of the statutes and their nearly identical substantive provisions. See note 1, supra
 
 
 [12]
 At bottom, appellees' case is one of statistical evidence. Dr. Schucany analyzed the upper management of the department which subsequently fell under the domain of the Vice President of Marketing. See note 4, supra. There were 29 persons in these upper-level management positions, including all of the appellees except Heffer. Seven of those persons were terminated before the end of 1978; one, Tipton, was subsequently terminated. Eighteen of the 29 were forty or over. Schucany ran a standard statistical deviation test to determine whether the terminations could have occurred without age being a factor. The test was run twice, once including Tipton among those terminated and once excluding him. With Tipton excluded, the probability that age was not a factor was 8.57 percent; with Tipton included it was 6.43 percent
 The standard methodology in this test is to compare the result with a threshold of five percent. Unless the percentage is less than five percent, it cannot be statistically concluded that age was a factor in the decision to terminate. Schucany also tested the probability that the employees' position in the marketing division was a factor, and concluded that it probably was. In fact, this percentage fell well under five percent.
 As noted above, the test did not include Heffer or other district sales managers. However the record reflects that there were 21 district sales managers in the time frame covered. Of these, twelve were over forty. Of the twelve over forty, only two were terminated. If these employees were included in the statistical model the statistical significance of age would obviously decrease. Thus, it appears that the statistical evaluation undercuts the theory that age was a determining factor in any of the employment decisions. See Harrell v. Northern Electric Company, 672 F.2d 444, 446-47 (5th Cir.1982) (statistical proof negated claim of absence of discrimination). More, Schucany's testimony concerning his statistical model, as noted above, was that age could neither be accepted nor rejected as the determinative factor in the discharges.