Robert SHERROD, Plaintiff-Appellee,

v.

SEARS, ROEBUCK & COMPANY,
Defendant-Appellant.

No. 85–2351.

United States Court of Appeals,
Fifth Circuit.

April 2, 1986.

Richard R. Brann, Baker & Botts, Tony P. Rosenstein, Houston, Tex., for defendant-appellant.

Donna Cywinski, McKenna & Cywinski, Houston, Tex., for plaintiff-appellee.

Before JOLLY and HILL, Circuit Judges, and EDWIN F. HUNTER,* District Judge.

ROBERT MADDEN HILL, Circuit Judge:

Sears, Roebuck & Company (Sears) appeals from a judgment entered on a jury verdict finding that Robert Sherrod's age was a determining factor in Sears' decision to terminate his employment. Because we conclude that the evidence was insufficient to support this finding, we reverse.

## I. FACTS

Robert Sherrod, born on September 24, 1942, began his employment with Sears in 1968. Over the following years Sherrod worked in several Sears locations in Texas. Sherrod received high performance evaluations, pay raises, and promotions. By 1977, Sherrod had assumed the position of credit manager at the Sears store in Orange, Texas, where he worked for two and one-half years and received an excellent performance rating.

In 1979, Sears consolidated the Orange store's credit accounts with those of two other stores, and Sherrod was transferred to manage commercial credit accounts at the Merchant's Charge Account (MCA) Central in Houston. Following this transfer L.W. Case, Sherrod's supervisor at MCA Central, wrote a letter on April 22, 1981, to Sherrod critical of his perform-

---

* District Judge of the Western District of Louisi-  ana, sitting by designation.

ance. Case's letter stated that "you are not involved in the every day operation at your department," and that "[c]orrective action can and must be taken immediately." Case made reference to a performance review conducted by two Sears auditors which concluded: "Activities in this office are poorly organized and Mr. Sherrod is not attuned to or involved in the details of the business." Despite this criticism Sherrod received a performance evaluation of "outstanding" while at this position.[1]

In the fall of 1981 Sherrod became co-authorization manager at the Greenspoint Credit Central in Houston when he was replaced at MCA Central by a more senior employee who had also been displaced as a result of recent consolidations within Sears. After four to five months as co-authorization manager, Sherrod became collections manager at Greenspoint. His predecessor in this position was Sandra Evans, five years younger than Sherrod, who was transferred to Baybrook Credit Central as a credit authorization manager.

At Greenspoint Sherrod began receiving a number of unfavorable evaluations. A performance evaluation dated March 19, 1982, prepared by Sid Douthit, Sherrod's supervisor, stated that "[c]urrent performance is unsatisfactory and is due principally to failure to supervise (ie) train, direct and follow-up."[2] A similar evaluation dated September 22 concluded that "[f]ailure to attain or achieve satisfactory collection results in Inactivity and delinquency which is Robert Sherrod's principal accountability,"

and that "[a] lack of urgency prevails in Robert's Collection Division." This latter evaluation rated Sherrod's performance as "fair," which is fifth from the top on a six-point scale. *See supra* note 1. Soon after the replacement of Douthit by Curtis Goode, Goode gave Sherrod a "Memo of Understanding" dated December 9 which was also critical of Sherrod's performance, claiming that "collection ratios in sections supervised by Robert Sherrod have been unsatisfactory during recent months." Goode's memo outlined four areas of potential improvement for Sherrod and warned that "[a] sense of urgency must be present and displayed continuously."

Sherrod was discharged fewer than four months after his fortieth birthday, on January 19, 1983, coincident with the consolidation of the Greenspoint office with the Baybrook office. John Merrill, Sears' General Credit Manager for the Southern Territory, made the decision to terminate Sherrod rather than transfer him to Baybrook. Sherrod was not replaced, as his termination was an element in an ongoing reduction in staff. Sherrod later found employment as a credit manager in a Galveston, Texas, furniture store.

At the time of his termination Sherrod worked with six other managerial personnel at Greenspoint Credit Central. These six had received performance ratings ranging from "distinguished" (first on a scale of six graduations) to "good" (fourth), *see supra* note 1, and all six received transfers

1. Sears had by this time begun using a formal six point scale to rate performance:
   DISTINGUISHED. Reserved for those few whose performance is clearly and consistently distinguished; far exceeds expectations of what is required, or should be accomplished. Demonstrates a very high level of expertise; serves as a model of excellence.
   OUTSTANDING. Performance is clearly and consistently above the level expected of a Sears executive. Clearly exceeds expectations of what is required. Outstanding, consistently effective executive performance.
   VERY GOOD. Meets the high standards of performance expected of a Sears executive. Consistently dependable, does the job as it is supposed to be done. Fully meets and sometimes exceeds performance requirements.

   GOOD. Performance is good. Generally acceptable. Usually meets the expected level of executive performance. Some improvement may be desirable.
   FAIR. Performance is fair. Comes close to meeting the acceptable level of performance or accomplishments expected of a Sears executive. Some improvement is necessary.
   POOR. Performance frequently fails to meet requirements of acceptability. Falls below the level of performance expected of a Sears executive. Inadequate to the extent that improvement is necessary.
   Sears had no "unsatisfactory" category.

2. Sherrod was not given a formal rating on this evaluation.

to Baybrook. Of these six, three were older than Sherrod and three were younger. Among the four personnel listed as collections managers, Sherrod was the oldest.

At his termination interview, Merrill asked Sherrod to sign a release of liability in exchange for $5,105.26, an amount in addition to Sherrod's accrued vacation and service allowances. Sherrod refused to sign the proffered agreement. Sherrod later filed a complaint with the Equal Employment Opportunity Commission, which determined not to further process the complaint because its investigation had failed to substantiate Sherrod's allegations of age discrimination.

Sherrod sued in federal district court, claiming relief under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621–34. After a mistrial was declared in which the jurors were unable to agree on a verdict, Sherrod prevailed in a second jury trial, and the district court entered judgment on the verdict. Sears' motion for directed verdict and motion for judgment notwithstanding the verdict having been denied, it appeals. Sears' sole argument is that the evidence was insufficient to uphold the jury's findings of age discrimination.

## II. SUFFICIENCY OF THE EVIDENCE

The standard of review for factual issues in an age discrimination case is the same as that normally applied in other cases. *El-liott v. Group Medical & Surgical Service,* 714 F.2d 556, 564 (5th Cir.1983) (citing *United States Postal Service Board of Governers v. Aikens,* 460 U.S. 711, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983)), *cert. denied,* 467 U.S. 1215, 104 S.Ct. 2658, 81 L.Ed.2d 364 (1984). Our task is "to determine whether the record contains evidence upon the basis of which a reasonable trier of fact could have concluded as the jury did." *Elliott,* 714 F.2d at 564; *see also Boeing Co. v. Shipman,* 411 F.2d 365, 374 (5th Cir.1969) (en banc). "A mere scintilla of evidence is insufficient to present a question for the jury." *Id.* "Self-serving and speculative testimony is subject to especially searching scrutiny." *Elliott,* 714 F.2d at 564.

■ One way to establish a prima facie case [3] in an ADEA claim where a reduction in force has occurred is to show three elements: first, that an ADEA plaintiff is within the protected age group [4] and that he has been adversely affected by the employment decision; second, that he was qualified to assume another position at the time of discharge or demotion; and third, that he has shown "producing evidence, circumstantial or direct, from which a factfinder might reasonably conclude that the employer intended to discriminate in reaching the decision at issue." *Williams v. General Motors Corp.,* 656 F.2d 120, 129 (5th Cir.1981), *cert. denied,* 455 U.S. 943, 102 S.Ct. 1439, 71 L.Ed.2d 655 (1982).[5]

---

**3.** In *McDonnell-Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), one common order of proof in a Title VII action was set forth. After the plaintiff meets the initial burden of establishing a prima facie case of discrimination, the burden shifts to the employer to articulate some legitimate, non-discriminatory reason for the employment decision. A plaintiff then has an opportunity to demonstrate the alleged reason was only a pretext. The elements of a prima facie case under *McDonnell-Douglas* are applicable in an ADEA case as well. *See Marshall v. Goodyear Tire and Rubber Co.,* 554 F.2d 730, 735 (5th Cir.1977). By the time a fully-tried case reaches us on appeal, the parties' showings at the preliminary levels of the *McDonnell-Douglas* framework are "largely irrelevant" because we need only address the propriety of the ultimate finding of discrimination

*vel non. EEOC v. Exxon Shipping Co.,* 745 F.2d 967, 972 (5th Cir.1984); *See Williams v. Southwestern Bell Telephone Co.,* 718 F.2d 715, 717–18 (5th Cir.1983).

**4.** The ADEA protects individuals who are at least forty but less than seventy years of age. 29 U.S.C. § 631(a).

**5.** We caution, as did the *Williams* court, that "these requirements do not beckon fanatic adherence. 'The facts necessarily will vary . . ., and the specification above of the prima facie proof required . . . is not necessarily applicable in every respect to different factual situations.'" 656 F.2d at 129 n. 12 (quoting *McDonnell Douglas,* 411 U.S. at 802 n. 13, 93 S.Ct. at 1824 n. 13, 36 L.Ed.2d at 677 n. 13).

Sears concedes that Sherrod meets the first two elements, but argues that there is no evidence of discriminatory intent.

■ As circumstantial evidence of discriminatory intent, Sherrod relies heavily on the fact that he was the oldest of the four persons listed as Greenspoint collections managers and the only one to be fired.[6] However, both Sherrod and Goode testified that the youngest of these four, notwithstanding her job title, did not perform a collections manager's duties; her tasks were apparently of a more clerical nature. Additionally, the evidence showed that in making his decision to fire Sherrod, Merrill compared him to the entire group of Greenspoint credit managerial personnel—a group which also included a fifty-four-year-old credit authorization manager (who transferred to Baybrook in the same position) and a fifty-six-year-old operating manager (who transferred to Baybrook as a credit authorization manager). There was no evidence that Merrill considered only the group of collection managers when deciding whom to terminate. While Sherrod initially testified that the positions of collections manager and authorization manager were distinct, he later conceded on cross-examination that they were "interchangeable." Thus, what meager statistical evidence exists is equivocal.[7] *See Elliott,* 714 F.2d at 566.

Sherrod points to the fact that a younger employee, Sandra Evans, was previously transferred from Greenspoint to Baybrook as evidence of age discrimination. However, Evans was not working in the Greenspoint office at the time of Sherrod's discharge. Thus, Evans was not one of the managers against whom Sherrod was compared in January 1983. She was not similarly situated to Sherrod, and the fact that she had been transferred rather than discharged constitutes no proof of discrimination against Sherrod. Absent a successful statistical demonstration, such an isolated datum represents scant evidence to support a jury finding. *See Elliott,* 714 F.2d at 567.

As a last resort, Sherrod claims that the release of liability offered to him upon his discharge constituted evidence sufficient to uphold the jury's finding. Merrill testified without contradiction that the release, a general waiver of claims, was required of all employees who were given the extra severance benefit. This amount of extra benefit was based on the cost of outplacement, a service Sears had previously provided its managerial employees but had discontinued prior to Sherrod's discharge. Sherrod has not shown any connection between the release and Sears' alleged discriminatory intent.[8]

Moreover, even if Sherrod could be said to have produced some slight circumstantial evidence of age discrimination, such a prima facie showing is not necessarily sufficient to take the case to the jury, in light of Sears' articulation of poor performance as the reason for his termination. *See Reeves v. General Foods Corp.,* 682 F.2d 515, 523 (5th Cir.1982). Because Sears articulated a legitimate, non-discriminatory reason for his discharge, "any presumption of age-based discrimination (and that was all that resulted from the prima facie case) as a basis for our sustaining the jury's verdict disappeared." *Id.* Sherrod then had to introduce sufficient evidence to show that Sears' articulated reasons were pretextual and that he had been discrimi-

---

6. The other three were twenty-six, twenty-nine, and thirty-eight, as compared to Sherrod's forty years of age.

7. In fact, the statistical result of Sherrod's discharge was actually to *increase* the average age of the managerial personnel at the Greenspoint credit office. Additionally, the average age of all of the managers at Baybrook, after the six transfers from Greenspoint, was about forty-three, and Sherrod had just turned forty. In the consolidated office at Baybrook, nine managers were older than Sherrod, five were younger, and one was his age.

8. We note that a general release of prior Title VII claims does not ordinarily violate public policy, and is enforceable absent force, fraud, or undue influence. *See Rogers v. General Electric Co.,* 781 F.2d 452, 454–56 (5th Cir.1986).

nated against because of age. We conclude that he failed to make such a showing.[9]

Sherrod failed to produce sufficient evidence that the negative performance evaluations, written by five supervisors and auditors, were a pretext to fire him because of his age.[10] Sherrod has not disputed his competitive ranking: he has not contended that he was performing as well as any of the other managers at Greenspoint. Sherrod claims that his performance was evaluated on the basis of incomplete information, and that these evaluations took place more frequently than required by Sears policy. However, Sherrod has not contended that age discrimination lay behind these adverse evaluations or that other managers were evaluated in a different manner. Sherrod's subjective belief of age discrimination, however genuine, cannot alone be the basis of judicial relief. *Elliott*, 714 F.2d at 567.[11]

Sherrod did not present sufficient evidence to discredit the legitimate reason for his discharge advanced by Sears. Against this articulated explanation, Sherrod did little more than present his personal belief

that he was actually fired because he had turned forty. *See Hornsby v. Conoco, Inc.*, 777 F.2d 243, 246 (5th Cir.1985) (although plaintiff was replaced by someone younger, directed verdict for employer was proper where plaintiff's subjective belief was the only rebuttal to employer's evidence of adequate, non-discriminatory reasons). On this record, we conclude that the evidence is not sufficient to justify a conclusion that Sherrod was discharged because of his age.

Accordingly, we reverse the judgment of the district court and direct entry of judgment for Sears.

REVERSED and RENDERED.

---

**9.** We recognize that Sherrod could have made this showing either by discrediting Sears' articulated reason or by showing that a discriminatory reason more likely motivated Sears' decision. As the Supreme Court has noted in the related Title VII context,

> The plaintiff retains the burden of persuasion. She now must have the opportunity to demonstrate that the proffered reason was not the true reason for the employment decision. This burden now merges with the ultimate burden of persuading the court that she has been the victim of intentional discrimination. She may succeed in this either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.

*Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 256, 101 S.Ct. 1089, 1095, 67 L.Ed.2d 207, 217 (1981). Our examination of the record forces us to conclude that Sherrod did not produce enough evidence to justify a reasonable conclusion supporting either proposition.

**10.** We note that Sherrod's three supervisors during the period in question, Case, Douthit, and Goode, as well as Merrill, the person who decided to fire Sherrod, were all significantly older than Sherrod. Of the two Sears auditors, Sherrod testified that one was older than he and one was approximately his age.

**11.** Sherrod contends that the other collections managers were also performing below Sears' expectations. However, this argument ignores the articulated basis for the decision, which was that Sherrod was the only manager occupying the second lowest ranking ("fair") on Sears' performance scale. All of the other managers were ranked at least one level higher. The ADEA only requires Sears to reach its employment decisions without regard to age. *See Williams,* 656 F.2d at 129. It does not require employers to retain older, less qualified employees. *See id.; cf. Thornbrough v. Columbus and Greenville Railroad Co.,* 760 F.2d 633, 647 (5th Cir.1985) ("if the factfinder determines that [the plaintiff] was *clearly better qualified* than the employees who were retained, it is entitled to conclude that [the employer's] articulated reasons are pretexts.") (emphasis added).