United States Court of Appeals,

Fifth Circuit.

Nos. 91–5707, 91–5738.

John Norman TURNER, et al., Plaintiffs,

John Norman Turner and W. Gene Wilson, Plaintiffs–Appellees,

v.

NORTH AMERICAN RUBBER, INC., and Cooper Tire & Rubber Company,
Defendants–Appellants.

W. Gene WILSON, Plaintiff–Appellee,

v.

COOPER TIRE & RUBBER CO., Defendant–Appellant.

John Norman TURNER, Plaintiff–Appellee,

v.

COOPER TIRE & RUBBER CO., Defendant–Appellant

John Norman TURNER and W. Gene Wilson, Plaintiffs–Appellees,

v.

NORTH AMERICAN RUBBER, INC. and Cooper Tire & Rubber Company,
Defendants–Appellants.

Dec. 14, 1992.

Appeals from the United States District Court for the Western District of Texas.

Before POLITZ, Chief Judge, and WISDOM and WIENER, Circuit Judges.

WISDOM, Circuit Judge:

This case involves the applicability of the Age Discrimination in Employment Act (ADEA)[1]
to senior management personnel.

The plaintiffs/appellees were awarded damages by the jury. The district court declined to
grant the defendant/appellant's motion for judgment notwithstanding the verdict (j.n.o.v.). We
reverse the judgment of the district court and render judgment dismissing plaintiffs' action.

[1] 29 U.S.C. §§ 621 *et seq.*

I.

A. *Background*

Cooper Tire & Rubber Company (Cooper) employed Gene Wilson and John Turner at its plant in Piedras Negras, Mexico. Wilson was the plant manager, and Turner was the controller. The plant was part of a maquiladora operation, a combination of Mexican and American companies in which the American firm buys raw materials in the United States and ships those materials to a Mexican plant where they are converted into a finished product that is then brought back into the United States. North American Rubber, Inc., was the American part of the operation and was located in Eagle Pass, Texas; Rio Grande SerVass, the Mexican part, was located in Piedras Negras.

Cooper purchased this operation from Curtis Publishing in June 1986 and appointed Wilson plant manager. He was fifty-two years old, had been employed by Cooper since 1974, and had served as plant manager at Cooper's plant in Clarksdale, Mississippi for the previous three and one-half years. Turner had worked for Curtis and was hired by Cooper after the acquisition. He was also fifty-two years old. Wilson was his immediate supervisor.

B. *Turner's Performance Problems*

Turner encountered difficulties from the start. His own exhibit lists seven instances of unfavorable comments in his personnel file between October 1986 and May 1987. As Wilson noted in a letter of January 30, 1987, Turner was failing to match invoices and receipts, to reconcile month-end capital expenditure reports with the financial statements, to properly review financial statements, and to perform adequately in several other areas. His performance was so poor that Wilson ended this letter with a warning that, "If substantial improvement is not made, a decision must be made with respect to your future employment with Cooper." In May, Wilson ended a letter to Turner with a similar but stronger warning: "A direct failure to follow work instruction is not an improvement on [your less than desirable past performance]. This should serve as a final warning concerning failure to follow work instruction. Future failure to follow work instruction could result in termination from employment."

In a letter Wilson wrote to Turner in June 1987, less than three weeks before Wilson was

fired, he indicated that "there has been progress, but there are areas which you must continue to improve upon." Wilson proceeds to list some of these areas and ends the letter with an offer to help Turner overcome his "deficiencies". Turner suggests that this letter indicates that he was now performing satisfactorily and distinguishes it from the seven "negative" letters.

In October 1987, one month after the new permanent plant manager took over, Turner was fired.

### C. *Wilson's Performance Problems*

Wilson's term as plant manager was similarly unsatisfactory. From July 1986 until he was fired in June 1987, the plant lost $3,859,092 dollars. In his best month, the total units produced was 151,104, and his average monthly production was 93,222 units. In the weeks before he was fired, Wilson had to shut down the plant because it was producing defective (lumpy and leaky) innertubes.

The district court improperly excluded evidence of the performance of Wilson's successors as plant manager[2], which demonstrates Wilson's poor performance as compared with his replacement. By the end of 1987, the plant managed to show a profit, which it never did under Wilson, and in February 1988, 243,500 units were produced; this figure was surpassed in March.

### D. *Procedural History*

Wilson and Turner and two other employees sued Cooper in federal district court on May 31, 1988 alleging age discrimination. On February 13, 1989, Wilson and Turner's state court actions alleging breach of employment contract and breach of covenant to deal fairly and in good faith were removed to the federal court and were consolidated on July 6, 1990. On April 4, 1989, the other two plaintiffs were both dismissed. On October 25, 1990, all state law claims with the exception of Wilson's employment contract claim were dismissed with prejudice.

The age discrimination claims and Wilson's contract claim were tried to a jury beginning February 19, 1991. After an eight-day trial, the jury, on February 28, 1991, returned a verdict for Turner in the amount of $53,585.00 and for Wilson in the amount of $170,512.00. Turner's award

---

[2]Wilson was initially replaced by Steve Switzer who served for three months and then by William Bonner who served for two years.

was solely back pay, while $70,512.00 of Wilson's was front pay. The jury also found for Wilson on the breach of contract claim, but the court held that to award damages for this would constitute a double recovery. The court granted attorneys' fees of $187,509.25 and costs of $16,846.89. Cooper filed a motion for a j.n.o.v. or in the alternative a new trial, which was rejected by the trial court. Cooper appealed this denial as well as several rulings made by the district court during the trial and the calculation of damages and fees and costs. Before this Court heard oral argument, the plaintiffs withdrew their cross-appeals.

## II.

### A. *Standard of Review*

A substantive review challenging a jury verdict is reviewed under our standard carefully articulated in *Boeing v. Shipman*[3]. Under that standard

> If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting [judgment n.o.v.] is proper. On the other hand, if ... reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, [j.n.o.v.] should be denied, and the case submitted to the jury ... A mere scintilla is insufficient to present a question for the jury ... However, it is the function of the jury as the traditional finder of facts, and not the Court, to weigh conflicting evidence and inferences, and determine the credibility of witnesses.

In recent years we have applied the *Boeing* test in numerous age discrimination cases.[4]

### B. *Evidence of Age Discrimination*

The plaintiffs suggest that Cooper's discharge of Wilson and Turner was part of a plan to replace the older managers with younger men. There is no hard evidence of this. Although Turner was replaced by one of his subordinates who was only twenty-eight, Turner himself was hired at age fifty-two. Two years after Wilson was fired, the person who was made plant manager was in his mid-thirties, but Wilson's two immediate successors were in their forties. This Court in *Little v. Republic Refining*[5] has previously held that merely because an employee's replacement is less than forty years old, the burden of supplying sufficient evidence is not met. Proof that one's replacement

---

[3]411 F.2d 365, 374–75 (5th Cir.1969) (en banc).

[4]*See, e.g., Normand v. Research Inst. of Amer.,* 927 F.2d 857, 859 (5th Cir.1991).

[5]924 F.2d 93 (5th Cir.1991).

is less than forty years old is necessary to establish a prima facie case, "but it is clearly insufficient for [the plaintiff's] ultimate burden of proving intentional age discrimnation."[6] As the Court of Appeals for the Seventh Circuit has observed, "Because younger people often succeed to the jobs of older people for perfectly legitimate reasons, the mere fact that an older employee is replaced by a younger one does not permit an inference that the replacement was motivated by age discrimination."[7] Further, whatever probative value this evidence might have is offset by the fact that several Curtis employees who were under forty years old were not hired by Cooper after its purchase of the maquiladora operation, and several employees, including Turner, who were older than forty were hired.[8]

The plaintiffs place particular emphasis on a comment which is alleged to have been made in the spring of 1986 by Wilson's boss, Bill Klein, Cooper's Vice–President of Operations. Klein supposedly told Wilson that he was sending him "three young tigers" to assist with the operations. Klein testified that he could not recall saying this but did testify that the three young employees who were sent down to assist Wilson were specifically requested by Wilson. Even if we were to assume that this comment was made, we have previously held that when age-related comments are "vague and remote in time and administrative hierarchy, they are no more than "stray remarks,' which are insufficient to establish discrimination". *Guthrie v. Tifco Industries.*[9] In that case it was alleged that on three occasions, the most recent of which was one year before the employee was terminated, the founder of the company told his son and successor that he needed "to surround himself with people his age". The "three young tigers" comment, allegedly made more than a year before Wilson was fired, does not in any way refer to Wilson's age nor is it in any way related to his discharge. It is

---

[6]*Little* at 98.

[7]*La Montagne v. Amer. Convenience Prod., Inc.,* 750 F.2d 1405, 1413 (7th Cir.1984).

[8]*See Little* at 96.

[9]941 F.2d 374, 379 (5th Cir.1991) cert. den. —— U.S. ——, 112 S.Ct. 1267, 117 L.Ed.2d 495 (1992). *See also Normand* at 864 n 3 which notes cases from seven different circuits which held that remarks were not sufficient evidence of age discrimination.

nearly identical with a comment in *Haskell v. Kaman Corp.*[10]   In that case which involved age discrimination, the Court of Appeals for the Second Circuit held it to be error for the district judge even to admit the comment into evidence.  That court found that a reference by the president of a company to some younger employees as "young turks" was not relevant to whether the terminated employee was fired because of his age and remanded the case for a new trial.[11]

Wilson has also suggested that the fact that he was only two years from being able to elect an early retirement played a part in the decision to fire him.  There is no evidence to support this, and although Wilson will now not be able to receive part of his benefits at age fifty-five, he did not lose his retirement benefits and will receive a vested pension at sixty-two.

Turner emphasizes that after the June 1987 letter which he suggests indicates improvement in his performance, there was no further negative documentation about him.  While the June letter does note that "there has been progress", it also described numerous failings and "deficiencies".  Moreover, in June 1987, Wilson was fired and the plant was shut down over the quality control problem.  It is understandable that Cooper had other more immediate concerns than adding a ninth or tenth negative assessment of Turner to its file.  It is worth noting that Turner was fired only a few weeks after Wilson's permanent replacement took charge.

C. *The Business Justification For Terminating Employment*

In oral argument, Cooper's attorney stated that these employees were fired in an attempt to "stop the hemorrhaging" that was occurring in Piedras Negras—losses which neared four million dollars and continued production of defective innertubes.  This Court has previously held, however, that even if the employees are performing their jobs adequately, an employer is not prohibited "from replacing [them] with [those] whom he subjectively believes will do a better job".  Otherwise as we stated in *Elliott v. Group Medical & Surgical Serv.,* "we would go far to insure that an employer could do nothing to correct unsatisfactory performance in *senior management,* most of whom will

---

[10]743 F.2d 113 (2nd Cir.1984).

[11]*Haskell* at 120.  The court also assigned error to the admission of the president's comment that two of his employees were "old ladies with balls".

always be within the ADEA's protection."[12]

Wilson and Turner were senior management: the plant manager and controller respectively. The inadequacies of Turner's performance is well documented, and Cooper held Wilson as plant manager responsible for the multi-million dollar losses and defective products. The fact that their successors turned the plant around only strengthens Cooper's business justification for their termination. In short, there is a dearth of evidence to supply the requisite nexus between Wilson and Turner's terminations and their ages so as to convert these business justifications for their discharges into mere pretexts for age discrimination. We hold that the district court erred in refusing to grant Cooper's motion for j.n.o.v. as to violation of the ADEA.

### D. *Other Issues on Appeal*

Our reversal and rendering of a take nothing judgment against Wilson and Turner on the age discrimination claim renders moot all other issues presented on appeal with the exception of Wilson's contract claim. In oral argument, however, Wilson's counsel admitted that he was an at-will employee. We hold, therefore, that Wilson has waived his contract claim.

### III.

This Court has a tradition of sympathy for persons discriminated against on any ground, but the ADEA should not "be a vehicle for judicial second-guessing of business decisions"[13]; a concern that is especially keen when the terminated employees are senior management. The ADEA was intended to protect older workers from discrimination, not to tenure them. It was certainly not intended to prevent companies from "stopping the hemorrhaging" as the red ink flows. We hold, therefore, that the evidence in the record of this case cannot support the jury's factual finding of age discrimination by Cooper, so we REVERSE the judgment of the district court and RENDER a take nothing judgment against Wilson and Turner, dismissing their age discrimination claims under the ADEA, and dismissing all remaining issues.

---

[12]714 F.2d 556, 567 (5th Cir.1983) cert. den. 467 U.S. 1215, 104 S.Ct. 2658, 81 L.Ed.2d 364 (1984) (emphasis added).

[13]*Thornbrough v. Columbus and Greenville R. Co.,* 760 F.2d 633, 647 (1985).