**Marlene THORNTON, Plaintiff,**

v.

**NEIMAN MARCUS, Defendant.**

**Civ. No. 3:93–CV–1698–H.**

United States District Court,
N.D. Texas,
Dallas Division.

March 15, 1994.

Marlene L. Thornton, pro se.

Stephen F. Fink, Thompson & Knight, Dallas, TX, for defendant.

## *MEMORANDUM OPINION AND ORDER*

SANDERS, Chief Judge.

Before the Court are the following: Defendant's Motion for Summary Judgment and Brief in Support, filed January 18, 1994; Plaintiff's Response and Amendment, both filed February 25, 1994; and Defendant's Reply, filed March 2, 1994.

## I. BACKGROUND

Plaintiff Marlene L. Thornton is suing Defendant The Neiman Marcus Group, Inc. for discriminating against her on the basis of her sex and race and, in addition, for retaliating against her because she opposed its alleged discriminatory practices.

From October 1986 until her termination on January 20, 1993, Plaintiff, a black female, worked for Defendant as an order checker. Plaintiff's immediate supervisor was the Manager of Order Checking, Sandra Compton ("Compton"), who is also a black female. Complaint at 1; Declaration of Sandra Compton ("Compton Decl.") ¶¶ 2–3.

On January 19, 1993, Betty Wright ("Wright"), a black female working for Defendant as Supervisor of the Purchase Journal Area, told Compton that Plaintiff had

made an error in her work. Compton Decl. ¶ 4; Declaration of Betty Wright ("Wright Decl.") ¶¶ 4–5. Plaintiff met with Compton and Wright in Compton's office to discuss the situation. Complaint at 2–3; Compton Decl. ¶ 5; Wright Decl. ¶ 5. Plaintiff and Compton had a heated exchange. Plaintiff asserted that she had followed Compton's previous instructions in handling the transaction. Compton responded that she had not told Plaintiff to charge "the whole fucking invoice" to one store. Complaint at 2–3; Compton Decl. ¶ 5; Wright Decl. ¶ 5. Plaintiff strongly objected to Compton's profane language. Complaint at 2. Wright and Compton aver that Thornton was yelling. Compton directed Plaintiff to process the transaction correctly, and Plaintiff told Compton that Wright should do it. Compton Decl. ¶ 5–6; Wright Decl. ¶ 5. Compton noted that it was Plaintiff's responsibility, not Wright's, to correct the error. Compton also instructed Plaintiff to make copies of relevant documents and give them to Wright. Compton Decl. ¶ 6.; Wright Decl. ¶ 5.

Plaintiff informed Defendant's Assistant Manager of Human Resources, Tracy Wurlitzer ("Wurlitzer"), a white female, of the incident. Complaint at 2; Declaration of Tracy Wurlitzer ("Wurlitzer Decl.") ¶ 3. Plaintiff emphasized to Wurlitzer how much Compton's use of profanity had upset her. Complaint at 2; Wurlitzer Decl. ¶ 3. Wurlitzer told Plaintiff that she would alert Defendant's Manager of Human Resources, Robin McBride ("McBride"), a white female, to the situation. Wurlitzer Decl. ¶ 4. Wurlitzer does not recall Plaintiff suggesting that she had experienced discrimination of any kind. Wurlitzer Decl. ¶ 5. Plaintiff thought that all the parties would meet that afternoon to discuss what had happened, but the meeting never occurred. Complaint at 2.

Wright later returned to Compton's office to see whether Plaintiff had made copies of the relevant documents. Plaintiff returned to Compton's office at Compton's request. Jackie Christian ("Christian"), also a black female and an order checker for Defendant, was in the room as well. Again, the ex-change between Plaintiff and Compton was heated; Wright and Compton remember that Thornton was shouting. Compton asked Plaintiff whether she had copied the documents for Wright, and Plaintiff stated that she had not. Compton repeated the request. Plaintiff insisted that she would not have time to make the copies until later and suggested that Compton make them herself. Compton ordered Plaintiff to copy the documents. Declaration of Jackie Christian ("Christian Decl.") ¶ 3; Compton Decl. ¶¶ 8–9; Wright Decl. ¶ 7. Plaintiff complied and provided Wright with copies of the relevant documents. Response at 1; Compton Decl. ¶¶ 11–12; Declaration of Robin McBride ("McBride Decl.") ¶ 4; Wright Decl. ¶ 8; Wurlitzer Decl. ¶ 6.

Compton reported the incidents to both Wurlitzer and McBride. Compton Decl. ¶¶ 11–12; In the presence of both Compton and Wurlitzer, McBride contacted Defendant's Vice President of Employee Relations, Liliane Danes ("Danes"), a white female. Compton Decl. ¶ 12; McBride Decl. ¶ 5; Wurlitzer Decl. ¶ 7. Danes determined that Plaintiff had violated one of Defendant's Standards of Conduct, the rules governing employee behavior. The Standards of Conduct describe misconduct for which Defendant may discipline or discharge an employee. According to the fifth rule of the Standards of Conduct, an employee may be discharged for her "[r]efusal to perform a job assignment or reasonable request of supervision, unprovoked insubordination or discourteous conduct toward customers, associates or supervisors." McBride Decl. ¶ 7 and attachment.

In Danes' assessment, Plaintiff's rudeness toward Compton and refusal to perform Compton's reasonable request violated the fifth rule of Defendant's Standards of Conduct. Danes decided that termination of Plaintiff's employment was the appropriate response. In making the decision to terminate rather than simply reprimand Plaintiff, Danes was strongly influenced by the fact that Plaintiff had had prior disciplinary problems while in Defendant's employ.[1] Danes

---

1. Specifically, Compton reports that, since August 1991, when she became Plaintiff's direct supervisor, Plaintiff had had "constant attendance problems and work problems that were

Decl. ¶ 3; McBride Decl. ¶¶ 5–7; Wurlitzer Decl. ¶ 7. Danes directed McBride to discharge Plaintiff, and, on January 20, 1993, Plaintiff was terminated. Danes Decl. ¶ 3; McBride Decl. ¶¶ 5–7; Complaint at 2.

Instead of replacing Plaintiff, Defendant distributed her work among its other employees. Compton Decl. ¶ 16; McBride Decl. ¶ 11. David Hope ("Hope"), a white male, works for Defendant as an order checker under the supervision of Compton. Hope has a history of involvement in arguments with co-workers. However, Compton and McBride believe he has never refused a supervisor's request or treated a supervisor rudely. Compton Decl. ¶¶ 22–23; McBride Decl. ¶ 12. At the time of Plaintiff's discharge, Defendant's order checking department was comprised of 23 employees—22 females and 1 male. McBride Decl. ¶ 13.

Plaintiff filed a charge of sex discrimination with the Equal Employment Opportunity Commission ("EEOC"). McBride Decl. ¶ 10 and attachment. On August 23, 1993, Plaintiff filed her Complaint *pro se,* alleging that Defendant had discriminated against her on the basis of sex and of race, as well as for the purpose of retaliation, in violation of Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII"). Defendant filed a Motion for Summary Judgment on January 18, 1994.

## II. ANALYSIS

### A. Summary Judgment Standard

Summary judgment is proper when the pleadings and evidence on file show that no genuine issue exists as to any material fact and that the moving party is entitled to judgment or partial judgment as a matter of law. *See* Fed.R.Civ.P. 56. The threshold inquiry, therefore, is "whether ... there are any genuine factual issues that properly can

be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251, 106 S.Ct. 2505, 2515, 91 L.Ed.2d 202 (1986).

Before a court may grant summary judgment, the moving party must demonstrate that it is entitled to judgment as a matter of law because there is no actual dispute as to an essential element of the nonmovant's case. *See Topalian v. Ehrman,* 954 F.2d 1125 (5th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 82, 121 L.Ed.2d 46 (1992).

Once the moving party shows that it is entitled to summary judgment, the burden shifts to the nonmoving party to "come forward with 'specific facts showing that there is a *genuine issue for trial.*'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (emphasis in original) (quoting Rule 56(e)); *see also Fontenot v. Upjohn Co.,* 780 F.2d 1190, 1195–98 (5th Cir.1986). A party must do more than simply show some "metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586, 106 S.Ct. at 1356.

Stated another way, "[i]f the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Friou v. Phillips Petroleum Co.,* 948 F.2d 972, 974 (5th Cir. 1991) (citing *Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1362). However, all of the evidence must be viewed in the light most favorable to the motion's opponent. *Gremillion v. Gulf Coast Catering Co.,* 904 F.2d 290, 292 (5th Cir.1990).

### B. Defendant's Motion for Summary Judgment

▉ Defendant requests summary judgment on all three of Plaintiff's Title VII

caused by her attendance problems." Compton Decl. ¶ 17. Compton and Plaintiff had discussed Plaintiff's absences several times. In Compton's assessment, "she could not continue in a 40-hour a week job while only showing up for 16 hours a week." Compton also notes that vendors had complained about Plaintiff's performance, and that Plaintiff frequently lagged behind in her assignments and filing. Compton describes specific reprimands she gave Plaintiff

in September 1991 and July 1992. In October 1992, Compton placed Plaintiff on probation for tardiness, absenteeism, and failing to process work in a timely manner. Compton Decl. ¶¶ 17–21.

In her Declaration, Danes observes that Plaintiff might have received only a reprimand and counseling for her insubordinate behavior, if Thornton had not had "prior disciplinary problems." Danes Decl. ¶ 3.

claims. Before the EEOC, Plaintiff only complained of sex discrimination. *See* McBride Decl. ¶ 10 and attached copy of letter Defendant received from the EEOC. In this case, Plaintiff also alleges race discrimination and retaliation. The EEOC did not subject the charges of race discrimination and retaliation to its administrative review process. Therefore, the Court will focus its analysis on Plaintiff's theory of sex discrimination. *See* 42 U.S.C. § 2000e-5 (filing charge with EEOC is condition precedent to suit under Title VII); *see also Young v. Houston*, 906 F.2d 177, 179–80 (5th Cir.1990) (observing that scope of inquiry of court hearing in Title VII action is limited to reasonably expected scope of EEOC investigation.) [2]

■ Plaintiff's Title VII claim alleging sex discrimination remains for the Court's consideration. Plaintiff alleges that she was fired for arguing with Compton while Hope, a white male order checker, has never received more than a reprimand for his discourteous and disruptive behavior. Response at 1.[3] To establish a prima facie case of sex discrimination under Title VII, Plaintiff must show that (1) she is a member of a protected class; (2) she was qualified for her job; (3) despite her qualifications, a decision was made that adversely affected her employment; and (4) either her position was filled by someone of the opposite sex, or members of the opposite sex received more favorable treatment because of gender. *Norris v. Hartmarx Specialty Stores, Inc.*, 913 F.2d 253, 254 (5th Cir.1990); *EEOC v. Brown & Root, Inc.*, 688 F.2d 338, 340–41 (5th Cir.1982); *Florence v. Frank*, 774 F.Supp. 1054, 1059 (N.D.Tex.1991).

It is clear that Plaintiff was not replaced by a person of the opposite sex. Compton Decl. ¶ 16; *see Spiller v. Ella Smithers Geriatric Ctr.*, 919 F.2d 339, 344 (5th Cir.1990). Thus, to present a prima facie case of sex discrimination, Plaintiff must show that she was treated less favorably than male employees, and that her gender was the determining factor in this disparate treatment. *Florence v. Frank*, 774 F.Supp. at 1059–60. In other words, the question of whether the employer intentionally discriminated against the plaintiff must be answered. The plaintiff has the ultimate burden of proof on this issue. *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 1093–94, 67 L.Ed.2d 207 (1981).

The plaintiff may prove intent either by direct evidence or by making sufficient showings in the basic structure of proof set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) and *Burdine*. In the *McDonnell Douglas—Burdine* formulation, the plaintiff must first make out a prima facie case of discrimination. If the plaintiff succeeds, the defendant must "articulate some legitimate, nondiscriminatory reason" for its action. Finally, if the defendant carries its burden, the plaintiff must show that the proffered reason is a pretext for discrimination. *Burdine*, 450 U.S. at 252–53, 101 S.Ct. at 1093.

To make out a prima facie case of discriminatory discharge resulting from the unequal application of discipline, a member of a protected class must show that he or she either did not violate the rule at issue, or that employees outside the protected class who engaged in similar acts were not punished

---

**2.** However, the Court notes that, under any of these theories of discrimination, Defendant's enunciation of legitimate, nondiscriminatory reasons for Plaintiff's termination is dispositive. With regard to both race and sex discrimination, Plaintiff has failed to meet her burden of producing evidence that the reasons given by Defendant for her termination were pretextual. *See St. Mary's Honor Center v. Hicks*, — U.S. —, —, 113 S.Ct. 2742, 2749, 125 L.Ed.2d 407 (1993). With regard to Plaintiff's allegation that she was terminated in retaliation for reporting Compton's behavior to McBride, Plaintiff would have to show that, "but for" her allegedly protected conduct, she would not have been fired. *See*

*McDaniel v. Temple Independent School District*, 770 F.2d 1340, 1346 (5th Cir.1985). Again, Plaintiff's failure to undercut Defendant's legitimate reasons for her termination is dispositive. *See infra* pp. — — —.

**3.** Plaintiff also asserts that Defendant unfairly fired her for insubordination, when in fact her anger had been provoked by Compton's disrespectful attitude and use of profanity. Plaintiff notes that Defendant's fifth Standard of Conduct prohibits only "unprovoked insubordination." Response at 1.

similarly. *Green v. Armstrong Rubber Co.*, 612 F.2d 967, 968 (5th Cir.), *cert. denied*, 449 U.S. 879, 101 S.Ct. 227, 66 L.Ed.2d 102 (1980).

Because Plaintiff is proceeding *pro se*, the Court regards her pleadings generously. Plaintiff has provided the Court with several documents to support her response. The Court cannot consider them competent summary judgment proof.[4] But even if the Court were to overlook their technical deficiencies, Plaintiff would not prevail.

■ The Court questions whether Plaintiff has established a prima facie case of discrimination on any theory. However, assuming that she has, the Court recognizes that Defendant has offered legitimate, nondiscriminatory reasons to rebut a presumption of discrimination. Defendant's employees aver that Plaintiff lost her job because of her insubordination, poor work habits, and history of disciplinary problems. Compton Decl. ¶¶ 12–13, 17–21, 24; Danes Decl. ¶ 3; McBride Decl. ¶¶ 4–6. According to Compton, her supervisor, Plaintiff's sex played no part in her termination, which was solely based on her misconduct. Compton Decl. ¶¶ 14–15. Compton and McBride acknowledge that Hope has argued with fellow employees but emphasize that he has never been rude or insubordinate to his superiors, and that his problems have not interfered with his productivity. Compton Decl. ¶¶ 22–23; McBride Decl. ¶ 12. Danes, Defendant's Vice President of Employee Relations, was directly responsible for Plaintiff's termination. She attests that neither Plaintiff's race nor her sex played a role in the decision to discharge her. Danes Decl. ¶ 4.

■ While an employer need not prove the legitimate reason, it must produce some evidence to support it. *St. Mary's Honor Center v. Hicks*, — U.S. —, —, 113 S.Ct. 2742, 2748 125 L.Ed.2d 407 (1993).

This burden of production is extremely light. The Court may not assess the credibility of the stated reason. Rather, if the employer has produced any evidence "which, *taken as true*, would *permit* the conclusion that there was a nondiscriminatory reason for the adverse action," then the employer has satisfied its burden. *Id.* (emphasis in original). The sworn statements of the responsible actors and decisionmakers—Compton, Danes, and McBride—supply legitimate, nondiscriminatory reasons for Plaintiff's termination. Compton Decl. ¶¶ 12–21, 24; Danes Decl. ¶¶ 3–5; McBride Decl. ¶¶ 4–6. The Court finds that Defendant's burden has been met.

■ The plaintiff bears the ultimate burden of proving that the reason stated by the defendant is actually a pretext for discrimination. *St. Mary's*, — U.S. at —, —, 113 S.Ct. at 2747, 2749. After the *St. Mary's* decision, it is clear that, once an employer articulates a legitimate, nondiscriminatory reason, the shifting burden scheme is abandoned and becomes irrelevant. The employer's intent is a question of fact, for which the plaintiff carries the burden of persuasion. *St. Mary's*, — U.S. at —, 113 S.Ct. at 2749.

The Fifth Circuit recently interpreted *St. Mary's* in the summary judgment context in *Bodenheimer v. PPG Industries, Inc.*, 5 F.3d 955 (1993). In *Bodenheimer*, the Circuit explained its focus in reviewing the trial court's grant of summary judgment: "[W]e must assess whether *Bodenheimer* tendered factual evidence that would lead a jury to reasonably conclude that PPG's reasons are a pretext for age discrimination." *Bodenheimer*, 5 F.3d at 958 (citing Fed.R.Civ.P. 56(c) and *St. Mary's*, — U.S. at —, 113 S.Ct. at 2747.) The Circuit concluded that the plaintiff in *Bodenheimer* had "fallen well short of his obligation to tender facts which, if believed,

---

4. The statements of Plaintiff, Debra Burton, and Johnnie Titus attached to the Response are not made in accordance with 28 U.S.C. § 1746; that is, they fail to assert their truthfulness under penalty of perjury. The individuals making the statements have also failed to affirmatively show that they are competent to testify about the matters described, as required by Rule 56(e) of the Federal Rules of Civil Procedure. Some of the documents presented by Plaintiff are either not properly authenticated or comprised of inadmissible hearsay. *See* Response and attachments.

Finally, the decision by the Texas Employment Commission is not admissible in this proceeding. *See Waggoner v. Garland*, 987 F.2d 1160, 1164–65 (5th Cir.1993); *see also* Tex.Lab.Code Ann. § 213.007 (West 1994) (formerly Tex.Rev.Civ. Stat.Ann. art. 5221b–9(r)).

would show that [the employer] more likely than not terminated [the plaintiff] because of his age. Instead, he has proffered a meager collection of evidence consisting of one facially neutral comment and various legal conclusions." The Circuit noted that *St. Mary's* instructed plaintiffs in employment discrimination cases to provide substantially more proof than the plaintiff had in the case before it. *Bodenheimer*, 5 F.3d at 959; *see also Barrow v. New Orleans S.S. Ass'n*, 10 F.3d 292, 298 n. 22 (5th Cir.1994) (holding that, at the summary judgment stage, "[t]o show that defendants' proffered reason was a pretext for discrimination, ... [the plaintiff] must offer evidence not only that the defendants' proffered reason was false, but also that ... discrimination was the real reason for the defendants' action.")

■ After consideration, it appears unlikely to the Court that Plaintiff has established a prima facie case. However, even if the Court assumes that Plaintiff has stated a prima facie cause of action for sex discrimination, Defendant must prevail. Defendant has articulated legitimate, nondiscriminatory reasons for Plaintiff's termination. *See* Compton Decl. ¶¶ 13, 17–21; Danes Decl. ¶ 3; McBride Decl. ¶¶ 4–6. Plaintiff's statement and the statements of Debra Burton and Johnnie Titus attest to their subjective opinions that discrimination was a factor in Defendant's decision. *See* Response and attachments. However, belief alone cannot constitute summary judgment evidence. *See Britt v. Grocers Supply Co., Inc.*, 978 F.2d 1441, 1451 (5th Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 2929, 124 L.Ed.2d 679 (1993); *Little v. Republic Refining Co.*, 924 F.2d 93, 96 (5th Cir.1991); *Florence v. Frank*, 774 F.Supp. 1054, 1059–61 (N.D.Tex.1991). Other than her own beliefs, and the subject opinions of others, Plaintiff has submitted no competent evidence to show that the reasons given are pretextual. In the face of a summary judgment motion, Plaintiff must produce summary judgment evidence, not just hearsay or conclusory allegations, in support of her case. *See* Fed.R.Civ.P. 56(e).

No evidence has been presented to sustain a finding that Defendant was motivated by unlawful discrimination in its treatment of Plaintiff. *See Bodenheimer*, 5 F.3d at 959. The Court holds that Plaintiff has not created a fact issue as to whether Defendant's articulated reasons for terminating her were pretextual. The Court notes that the lack of evidence showing pretext disposes of all three of Plaintiff's discrimination claims. Thus, summary judgment for Defendant is warranted.

## III. CONCLUSION

Defendant's Motion for Summary Judgment is **GRANTED.** Judgment will be entered accordingly.

SO ORDERED.