**Fredrick J. LIND, Plaintiff,**

v.

**UNC INCORPORATED, Defendant.**

**No. CIV.A. 3:97–CV–0637–L.**

United States District Court,
N.D. Texas,
Dallas Division.

Feb. 19, 1999.

---

**352**

John Graves, Ross, Hudgens & Graves, Longview, TX, for Plaintiff, Fredrick J. Lind.

Katie J. Colopy, Laura C. Fisher, Jones, Day, Reavis & Pogue, Dallas, TX, for Defendant, UNC Corporation.

### MEMORANDUM OPINION AND ORDER

LINDSAY, District Judge.

Before the court are Defendant's Motion for Summary Judgment, filed July 29, 1998, and Defendant's Motion to Strike Portions of Affidavits, filed September 8, 1998. After careful consideration of the motion, response, reply, and the summary judgment evidence, the court grants Defendant's Motion for Summary Judgment. The court grants in part and denies in part Defendant's Motion to Strike Portions of Affidavits.

### I. *Procedural and Factual Background* [1]

Plaintiff Frederick Lind ("Lind") alleges that UNC Incorporated ("UNC") improperly discriminated against him on account of his age, in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.* Lind bases his age discrimination claim on two events. First, he alleges that UNC removed him from his position as Accessory Services Vice President of Sales and Marketing in January 1996 on account of his age. He further contends that UNC's final decision to terminate his employment in September 1996 was also due to his age. UNC maintains that both decisions were made solely for business reasons and that Lind's age was not considered at all in making the decisions.

Defendant UNC was formerly a publicly-held company engaged in the aviation services industry.[2] UNC's business activities include manufacturing and remanufacturing jet engine and aircraft components, the overhaul of aircraft accessories, aircraft engines, and industrial gas turbine engines, the refurbishment and overhaul of helicopters, aircraft maintenance services, and pilot training contract services.[3] While it was headquartered in Annapolis, Maryland, UNC had numerous operating divisions located throughout the United States.[4] One of UNC's operating divisions was "Accessory Services", headquartered in Grand Prairie, Texas. The Ac-

---

1. The majority of this factual background is taken from Defendant's appendix in support of its summary judgment motion. Plaintiff does not outline these facts in his response; however, most of the facts set forth in this section are not disputed by Plaintiff or are taken directly from Plaintiff's own testimony. On page 2 of his Brief in Opposition to Defendant's Motion for Summary Judgment, Plaintiff states in a conclusory fashion that certain facts are not uncontroverted; however, Plaintiff has made no effort to set forth evidence showing that this is the case. Plaintiff's mere conclusory statement in his pleading does not sufficiently raise a factual dispute concerning the record evidence cited to by Defendant. *Wal-*

*lace v. Texas Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir.1996); *Hightower v. Texas Hosp. Ass'n*, 65 F.3d 443, 447 (5th Cir.1995).

2. Appendix to Defendant's Brief in Support of its Motion for Summary Judgment ("Defendant's App.") at p. 114. UNC and its operating divisions were acquired by General Electric in the fall of 1996. *Id.* at 129–30.

3. *Id.*

4. *Id.* at pp. 27–28 and 108–115.

cessory Services division was engaged in the overhaul of aircraft accessories.[5]

Plaintiff Lind was initially offered full time employment with UNC in March 1992, when he was 58 years old.[6] Lind's initial position entailed working on corporate business development matters within UNC's corporate headquarters.[7] Lind was given the title Vice President for New Business Development, and his responsibilities included researching potential acquisitions for UNC.[8] In this position Lind reported to Ron Kiripolsky ("Kiripolsky"), Vice President of Corporate Development.[9]

In August 1993, UNC underwent a reorganization.[10] While Kiripolsky was shifted to another position, Lind continued as Vice President of New Business Development.[11] In late 1993 or early 1994, Kiripolsky asked Lind to move to Texas to develop regional airline business "from an overhaul standpoint."[12] Lind moved to Texas in February 1994, and in April 1994 he was officially appointed Vice President of Accessory Services.[13] He was 60 years old when promoted to this position.[14] As Vice President of Accessory Services, Lind was fully responsible for the profit and loss in the Accessory Services division, the growth of that business, and the American Eagle program.[15] The American Eagle program was an effort by UNC to expand the Accessory Services business by developing regional airline customers such as American Eagle.[16] When Lind be-

came Vice President of Accessory Services, the Accessory Services Business was experiencing difficulties. Lind stated that at that time, the business was in "very bad" shape.[17] Lind was directed to do whatever he could to correct the problems with Accessory Services.[18]

In September 1994, UNC made further organizational changes. Gerry Czarnecki ("Czarnecki") was hired as UNC's Chief Operating Officer.[19] Due to Czarnecki's new position, Kiripolsky's responsibilities were reduced to the extent that he was only in charge of Accessory Services, Lind's area of responsibility.[20] Shortly thereafter, Kiripolsky's position changed again and Bob Gustafson ("Gustafson") was hired as Senior Vice President of Accessory Services.[21] At that point, Lind was given the position of Vice President of Sales and Marketing in an acting capacity, again reporting to Kiripolsky.[22] Eventually Lind was selected to be Accessory Services Vice President of Sales and Marketing, a position which reported to Gustafson.[23] Lind was almost 61 years of age when he was assigned to the Accessory Services Vice President of Sales and Marketing post.[24] In this position Lind was responsible for increasing sales and generating higher levels of components brought into the four different areas of the Accessory Services business for overhaul and repair.[25] Lind had a sales staff that reported to him that included Tim Pine ("Pine"), Kevin Vail ("Vail"), George Ringger

**5.** *Id.*

**6.** *Id.* at pp. 4, 20, 23–26, and 125. Lind had previously worked for UNC as a consultant. *Id.* at p. 20.

**7.** *Id.* at pp. 20 and 23–26.

**8.** *Id.* at p. 25.

**9.** *Id.* at p. 26.

**10.** *Id.* at p. 33.

**11.** *Id.* at pp. 33–36, 103–04, and 194.

**12.** *Id.* at p. 37.

**13.** *Id.* at pp. 38–39 and 105.

**14.** *Id.* at p. 39.

**15.** *Id.* at pp. 39–40 and 105.

**16.** *Id.* at p. 40.

**17.** *Id.* at p. 41.

**18.** *Id.* at pp. 46–47 and 154–57.

**19.** *Id.* at pp. 127–28.

**20.** *Id.* at pp. 52–53.

**21.** *Id.* at p. 53.

**22.** *Id.* at pp. 53 and 108–115.

**23.** *Id.* at pp. 57, 59, 197–204, and 235–35.

**24.** *Id.* at pp. 78 and 125.

**25.** *Id.* at pp. 77 and 202.

("Ringger"), Lou Delaney ("Delaney") and Phil Rosnick ("Rosnick").[26]

Prior to these management changes, Accessory Services had continued to perform poorly. Several large customers had been lost, and their business was not replaced. As a result, UNC lost a considerable amount of money and experienced low profitability in 1993 and 1994.[27] From the beginning of his tenure with Accessory Services, Gustafson was under intense pressure to turn the situation around.[28]

By late fall 1995, Gustafson determined that Plaintiff was not achieving the necessary results in the sales department of Accessory Services. Gustafson was increasingly concerned about the rate of inputs coming into the shops. The business was running below the break-even level, and by October or November 1995, Gustafson, Knapp, and Colussy all decided that new leadership was needed in sales and marketing.[29] Colussy described the situation as follows: "...we were really at that stage when [Accessory Services] was going to have to shut down. There [were] going to be hundreds of jobs lost. So we had to keep almost desperately at that point trying to find solutions...."[30] Lind states that these facts are disputed,[31] but fails to point to or offer any specific facts in the record placing them in dispute. Lind's bald assertion cannot carry his summary judgment burden. *Wallace,* 80 F.3d at 1047; *Hightower,* 65 F.3d at 447.

In January 1996 Craig Huston ("Huston"), a man in his early 30's, was selected to replace Lind as Accessory Services Vice President of Sales and Marketing.[32] Although Lind had been removed from the Vice President of Sales and Marketing position, he continued to be employed by UNC and was assigned to work on special projects under the supervision of Bob Pevenstein ("Pevenstein").[33] Although he never worked on a project for Pevenstein, several other interim projects kept Lind busy.[34]

In April 1996, Lind met with Knapp and was told that UNC was still looking for a position for him. Knapp also stated that if UNC did not find him another position, he might want to consider negotiating a severance package, and explained that if Lind were offered enhanced severance benefits he would be required to sign a release.[35] Knapp also requested Lind's input regarding positions for which he might be suited.[36] In response, Lind wrote a letter requesting that UNC create a new position for him.[37] At that time UNC was in the process of eliminating many corporate positions and was not creating new ones.[38]

Shortly thereafter, Lind was assigned by Colussy to work on the "Church Rock Project," an undertaking to develop a reclaimed nuclear waste site in New Mexico. Lind worked on this project until July 1996, when it became clear that the project would not succeed.[39] If the Church Rock Project had been successful, UNC would have employed Lind on an ongoing basis in connection with the project.[40] On September 5, 1996, Knapp informed Lind that his employment would be terminated effective September 16, 1996.[41] Lind was 62 years old at the time of his discharge.[42]

26. *Id.* at pp. 75–76.

27. *Id.* at pp. 41–42, 47–49, 204–05.

28. *Id.* at pp. 205–06.

29. *Id.* at pp. 177–78, 211–16, 222–23, 257–60.

30. *Id.* at p. 151.

31. Plaintiff's Response at p. 2.

32. Defendant's App. at pp. 215–16.

33. *Id.* at p. 72.

34. *Id.* at pp. 69–71 and 72–74.

35. *Id.* at pp. 81–82 and 242–48.

36. *Id.* at p. 82.

37. *Id.* at pp. 93 and 120–21.

38. *Id.* at pp. 273 and 275–76.

39. *Id.* at pp. 94, 124, and 249–52.

40. *Id.* at pp. 73, 172–74, and 271–74.

41. *Id.* at pp. 85 and 122–23.

42. *Id.* at p. 125.

## II. *Summary Judgment Standard*

Summary judgment shall be rendered when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Ragas v. Tennessee Gas Pipeline Company*, 136 F.3d 455, 458 (5th Cir.1998). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Ragas*, 136 F.3d at 458.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita*, 475 U.S. at 586, 106 S.Ct. 1348. Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir.1996). The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Ragas*, 136 F.3d at 458. Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support Plaintiff's opposition to Defendants' motion. *Id., Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915–16 & n. 7 (5th Cir.), *cert. denied*, 506 U.S. 832, 113 S.Ct. 98, 121 L.Ed.2d 59 (1992). "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248, 106

S.Ct. 2505. Disputed fact issues which are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id.* If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential. to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322–23, 106 S.Ct. 2548.

## III. *Defendant's Motion for Summary Judgment*

Lind's only claim in this case is for age discrimination under the ADEA. UNC moves for summary judgment on this claim and maintains that the case should be dismissed with prejudice. In support of its motion, UNC argues that there is no genuine issue of material fact present in the record concerning Lind's claim of age discrimination.

In the context of summary judgment, a substantial conflict in evidence must exist to create a jury question on the issue of discrimination. *Boyd v. State Farm Ins. Cos.*, 158 F.3d 326, 328 (5th Cir.1998), *citing Rhodes v. Guiberson Oil Tools*, 75 F.3d 989, 993 (5th Cir.1996) (en banc). Therefore, a plaintiff can defeat a motion for summary judgment only if the evidence, taken as a whole: (1) creates a fact issue as to whether each of the employer's stated reasons was what actually motivated the employer; and (2) creates a reasonable inference that age was a determinative factor in the actions of which plaintiff complains. *Id.* at 328–29; *Rhodes*, 75 F.3d at 994. For the reasons subsequently stated, no reasonable juror could conclude that age was a determinative factor in discharging Lind.

### A. *Lind's Prima Facie Case*

■ The Fifth Circuit has adopted the burden-shifting evidentiary analysis first developed by the Supreme Court in *McDonnell Douglas v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), for use in ADEA cases. *Fields v. J.C. Penney Co., Inc.*, 968 F.2d 533, 536 (5th Cir.1992). To establish a prima facie case of age discrimination, Lind must set forth evidence showing that 1) he was discharged; 2) he was qualified for his position; 3) he was within the protected

class; and 4) he was replaced by someone outside the protected class, someone younger, or that he was otherwise discriminated against because of his age. *Brown v. CSC Logic, Inc.,* 82 F.3d 651, 654 (5th Cir.1996); *Moore v. Eli Lilly & Co.,* 990 F.2d 812, 815 (5th Cir.), *cert. denied,* 510 U.S. 976, 114 S.Ct. 467, 126 L.Ed.2d 419 (1993). For purposes of its summary judgment motion only, UNC does not dispute that Lind has successfully established his prima facie case. Therefore, the court will similarly assume that Lind has done so.

### B. UNC's Legitimate, Non-discriminatory Reasons

█ Because Lind has established his prima facie case, the burden shifts to UNC to articulate a legitimate non-discriminatory reason for its actions. *Brown,* 82 F.3d at 654, *citing Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 253–54, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). The court finds that UNC has done so. The summary judgment proof submitted by UNC shows that it removed Lind from the Vice President of Sales and Marketing position in January 1996 because the Accessory Services business was experiencing losses and had failed to improve while Lind held that position. The evidence further shows that several legitimate non-discriminatory reasons justify UNC's later decision to terminate Lind's employment altogether. UNC did not have a position available for Lind. Furthermore, the company was no longer in an expansion mode, was eliminating numerous jobs, and therefore was unable to create a new position for him. Finally, all of the projects Plaintiff was working on had ended and there were no new projects on the horizon. All of these reasons constitute legitimate non-discriminatory reasons for the adverse employment actions it took against Lind.

### C. Lind's Evidence of Pretext

To survive summary judgment, Lind must set forth probative evidence demonstrating that UNC's stated reasons for the actions it took are merely a pretext, and that the real reason for its decisions to remove him from one position and to later terminate him from

his employment was impermissible age discrimination. *Brown,* 82 F.3d at 654; *Bodenheimer v. PPG Industries, Inc.,* 5 F.3d 955, 957–58 (5th Cir.1993). This requires him to demonstrate "discrete facts" showing a causal nexus between his age and UNC's adverse employment decisions. *Moore,* 990 F.2d at 817 n. 24 (in ADEA cases, "prevalent flaw" in losing plaintiffs' evidence is the absence of proof of nexus between the adverse employment decision and the employer's allegedly discriminatory acts).

Lind's evidence of pretext consists of the following: 1) age-related remarks by Gustafson and Knapp; 2) the opinions of co-workers (who were uninvolved in the employment decisions affecting Lind) that Lind was discriminated against because of his age; and 3) evidence purportedly showing that Lind was not to blame for the problems experienced by the Accessory Services division, and therefore he must have been terminated due to his age. For the reasons stated below, the court concludes that Lind has failed to raise a fact issue concerning pretext.

#### 1. Age-related Remarks

█ Age-based comments are not probative of an employer's discriminatory intent unless they are direct and unambiguous, allowing a reasonable jury to conclude without any inferences or presumptions that the employee's age was improperly considered in deciding to terminate the employee. *E.E.O.C. v. Texas Instruments, Inc.,* 100 F.3d 1173, 1181 (5th Cir.1996); *Bodenheimer,* 5 F.3d at 958. To be evidence of age discrimination rather than mere stray remarks, the comments at issue must be 1) age-related; 2) not remote in time; 3) made by the decision maker; and 4) related to the employment decision at issue. *Turner v. North American Rubber, Inc.,* 979 F.2d 55, 59 (5th Cir.1992). Furthermore, statements that may seem to indicate age bias when standing alone, but do not indicate age bias when properly interpreted in the context in which they are made, will not be considered competent evidence of discrimination. *Texas Instruments,* 100 F.3d at 1181.

█ Lind alleges that at various times certain age-related remarks were made to him. Lind's first example of this is Gustafson

called Lind an "old curmudgeon" when Lind refused to answer Gustafson's question in a staff meeting held two weeks after Lind was removed as Vice President of Sales and Marketing, and Gustafson spelled out the term "old curmudgeon" on the blackboard and defined it for those present at the meeting.[43] This remark is a stray remark that does not constitute direct evidence of age discrimination, because it does not shed any light on whether UNC made its decisions regarding Lind's employment on account of Lind's age. Furthermore, it was made *after* Lind had been removed as Vice President of Sales and Marketing, and Lind has offered no evidence connecting this remark to UNC's decisions to remove him from the Vice President of Sales and Marketing position and to terminate him. *Turner,* 979 F.2d at 59. The Fifth Circuit has held that a mere stray remark is insufficient to establish age discrimination. *See Waggoner v. City of Garland, Texas,* 987 F.2d 1160, 1166 (5th Cir.1993) (decision maker's comment that plaintiff was an "old fart" was a stray remark and did not indicate age bias). Even when it is taken in the light most favorable to Lind, the term "old curmudgeon" is very similar to the stray remark made in *Waggoner.* Therefore, it does not sufficiently raise a fact issue concerning pretext.

Lind further asserts that after his removal from the Vice President Sales and Marketing position, Gustafson told him that at his "age" he should be relieved at being removed because there was a lot of pressure in the position and it would be better if a "younger" guy did it.[44] Lind's own testimony reveals that he interpreted this remark as an effort by Gustafson to "soft soap"[45] him regarding the decision to remove him from the position, that is, to "soften the blow" or make him feel better about being removed. Therefore, when this context is added to the naked statement presented in Lind's brief, it does not indicate or suggest that age was a factor in either of the two employment decisions challenged by Lind in this case. *See Texas Instruments,* 100 F.3d at 1181.

Another alleged comment pointed to by Lind is that Gustafson remarked on several occasions that "if you get old enough and hang around long enough, you know everybody in this business."[46] Lind had over 40 years experience in the aviation industry.[47] This remark reveals nothing more than the truth: that persons who work in an industry for a long time will build up extensive personal contacts within that industry. This type of truism is absolutely no evidence of age discrimination. *Id.* at 1181–82.

Lind also states that each time he was called "old" he felt uncomfortable and believed that his age was a negative factor in Gustafson's mind.[48] Because Lind has no other evidence of age discrimination, his interpretation of these comments reflects no more than his subjective belief that UNC discriminated against him. Lind's subjective belief will not sufficiently establish his ADEA claim. *Waggoner,* 987 F.2d at 1164.

Next, Lind cites to the fact that on one occasion Colussy made a remark which included the phrase "you old maintenance guys have always been sticklers for this sort of thing".[49] By Lind's admission, this comment was made in the course of a conversation where Colussy was describing his prior experience at Pan American World Airways, where he felt his ability to accomplish results from a business standpoint was inhibited by the maintenance department's insistence on properly maintaining airplanes.[50] When placed into this context, this statement clearly refers to Lind's background in aircraft maintenance and was not intended or made to be a reference to his age. Furthermore, Lind states that this conversation occurred in 1994, and thus it is remote in time to the challenged employment decisions, both of

---

43. Plaintiff's Appendix ("Plaintiff's App.") at pp. 1–6, 20, and 44–45.

44. *Id.* at p. 25.

45. Defendant's App. at pp. 78–79.

46. Plaintiff's App. at pp. 21–22.

47. Defendant's App. at p. 121.

48. Plaintiff's App. at pp. 21–22.

49. *Id.* at p. 19.

50. *Id.*

which occurred in 1996. *See Turner,* 979 F.2d at 59. Therefore, this comment does not demonstrate that UNC discriminated against Lind because of his age. *See Texas Instruments,* 100 F.3d at 1181.

■ It is also undisputed that during a discussion regarding Lind's severance benefits, Knapp indicated that he would attempt to "bridge" Lind's medical benefits until he reached age 65,[51] and that Knapp asked Lind to sign an ADEA release in exchange for severance benefits.[52] Lind points to these statements as evidence of age bias. As a matter of law, an employer's reference to severance benefits or retirement packages does not constitute evidence of age discrimination. *Bodenheimer,* 5 F.3d at 958 n. 7.[53] Also, Knapp testified that it was company policy to require a release whenever an employee was given any type of enhanced severance benefits.[54] The employer in *Sherrod v. Sears, Roebuck & Co.,* 785 F.2d 1312, 1315 (5th Cir.1986) had the same policy. The Fifth Circuit held that it was not evidence of age discrimination because the plaintiff did not show "any connection between the release and Sears' alleged discriminatory intent." *Id.* Similarly, Lind has set forth no evidence here to connect UNC's request for a release to any alleged discriminatory motive it may have had in discharging him. Therefore, Knapp's discussion with Lind regarding a release does not provide Lind with the evidence he needs to carry his summary judgment burden either.

Lind has also shown that Gustafson testified that he was looking for new ideas, and that "new" is the opposite of "old".[55] Lind strains credulity by suggesting that this testimony evidences age discrimination. "New" certainly can be the opposite of "old" in numerous contexts. Here, Gustafson's testimony regarding "new" versus "old" refers directly to ideas, not people, and in no way references Lind. This statement sheds no light whatsoever on the issue before the court: whether UNC discriminated against Lind due to his age. Indeed, it would be fatuous for one to be so disingenuous to believe that new ideas could not come from older individuals. Youth by no means is the sole source of new ideas or innovations.

Gustafson told Lind that Knapp was enamored with a "younger" employee, and Knapp told Kiripolsky that he had hired a "young" replacement for Lind.[56] It is undisputed that UNC was interested in hiring, and ultimately did hire Huston, an individual who is significantly younger than Lind. Taking these statements in the light most favorable to Lind, they reflect nothing but truisms that do not evidence age discrimination. *See Texas Instruments,* 100 F.3d at 1181–82.

For summary judgment purposes, the court views all of the above facts in the light most favorable to Lind and accepts them as true; however, even when the court makes this assumption, it is forced to conclude that none of these alleged remarks constitutes probative evidence of age discrimination.

### 2. *The Opinions of Lind's Co-workers*

■ To defeat UNC's summary judgment motion, Lind has submitted the affidavits of Pine, Vail, and Anthony DiVincenzo ("DiVincenzo"), three of his co-workers. In their affidavits, all three proffered their opinions that Lind was fired because of his age. As the court has stated above, the subjective beliefs of Pine, Vail, and DiVincenzo are not competent evidence of discrimination. *Waggoner,* 987 F.2d at 1164; *see also Thornton v. Neiman Marcus,* 850 F.Supp. 538, 544

---

**51.** Plaintiff's App. at pp. 26, 28, 32, 40–41, and 64–67.

**52.** *Id.* at pp. 26, 28, 32, 41, and 68–69.

**53.** The *Bodenheimer* court pointed out that undesirable consequences would ensue if discussions or comments regarding retirement benefits could be construed as evidence of age discrimination. "To assert that an employer is incapable of ever mentioning or noting an employee's age in a discharge situation would be to work the absurd result that an employer could not discuss severance packages and pension calculations with a departing employee." 5 F.3d at 958 n. 7, *quoting Perry v. Prudential–Bache Securities,* 738 F.Supp. 843, 853 (D.N.J.1989).

**54.** Plaintiff's App. at pp. 26, 28, 32, 41, and 68–69.

**55.** *Id.* at pp. 147–48.

**56.** *Id.* at pp. 20, 22, and 119–20.

(N.D.Tex.1994) (statements of co-workers that in their opinions plaintiff was victim of discrimination did not constitute summary judgment evidence). By the time Lind was terminated, both Pine and DiVincenzo had already left UNC. It is also undisputed that these individuals were not involved in making UNC's decisions regarding Lind's employment and therefore did not have any personal knowledge of the decision making process. Nothing in these affidavits demonstrates the requisite personal knowledge for the opinions contained therein. Lind cannot support his case with hearsay or conclusory allegations. *Thornton*, 850 F.Supp. at 544.

Lind relies heavily on *Hansard v. Pepsi–Cola Metropolitan Bottling Co., Inc.*, 865 F.2d 1461, 1466 (5th Cir.1989), which holds that in limited circumstances courts may allow lay witnesses to express their opinions about the motivation of another person *if the witness has an adequate opportunity to observe the underlying circumstances* (emphasis added). In making his argument, Lind has ignored the crucial requirement for the admission of such testimony: that the witness has personal knowledge of the underlying circumstances. Here, none of the three affiants has any personal knowledge of the underlying circumstances that led to Lind's termination, that is, the decision making process UNC went through in deciding that Lind should be removed from the Vice President of Sales and Marketing position and eventually discharged. Therefore, *Hansard* does not support Lind's argument that the court should rely on the Pine, Vail and DiVincenzo affidavits to defeat UNC's motion for summary judgment. The opinions of Lind's co-workers fail to raise a fact issue concerning pretext.

### 3. The Problems with Accessory Services

■ Lind further attempts to avoid summary judgment by presenting evidence showing that the Accessory Services division was in dire straights long before he was put in charge of its sales and marketing function, and that he was not the cause of the division's problems. Much of the evidence on this point is undisputed and the parties seem to agree that UNC did not blame Lind for these preexisting problems. It is also undis-

puted that Lind was brought into the Accessory Services business to help turn it around. When Lind failed to do so, he was removed as Vice President of Sales and Marketing. Lind contends that this evidences age discrimination because he did not cause the problems, and sets forth evidence showing that if these problems are ignored, he actually produced a 33% increase in growth to Accessory Services. Lind misses the point here. He was charged with the responsibility of turning around the sales department *in spite of* the problems Accessory Services was embroiled in at the time, admittedly a difficult task. The record reflects that when the needed results were not achieved, UNC made a business decision to bring in someone new to give it a try. Again, Lind has not pointed to any evidence which connects UNC's decision to remove him from the sales and marketing position with the alleged intent of UNC to discriminate against him because of his age.

■ Under these circumstances, Lind is not permitted to second-guess the difficult business decision made by UNC. "The ADEA was not intended to be a vehicle for judicial second-guessing of employment decisions, nor was it intended to transform the courts into personnel managers." *Bienkowski v. American Airlines, Inc.*, 851 F.2d 1503, 1507–08 (5th Cir.1988). The ADEA does not protect older workers from unfair or incorrect decisions, only those that are unlawfully motivated. *Id.* Even if a jury chose to believe that Lind's performance should have been evaluated absent the problems he inherited upon his employment with Accessory Services, Lind is still unable to prove that UNC's decision to remove him from his position was motivated by impermissible age-related factors. Here, Lind again fails to raise a genuine issue of material fact concerning pretext. UNC is entitled to summary judgment on Lind's ADEA claim.

### IV. Defendant's Motion to Strike Portions of Affidavits

UNC has lodged several objections to the Pine, Vail, and DiVincenzo affidavits. As is articulated above, the court had disregarded this evidence where necessary. With regard

to those statements, Defendant's Motion to Strike Portions of Affidavits is granted. All portions of the Pine, Vail, and DiVincenzo affidavits wherein those affiants state that they believe Lind was removed as Vice President of Sales and Marketing and/or terminated because of his age are hereby stricken from the summary judgment record. The court has not found it necessary to rely on the remainder of the challenged evidence. Therefore, the remaining portions of the motion to strike are denied as moot.

## V. *Conclusion*

For the reasons previously stated, there is no genuine issue of material fact with respect to Lind's claim against UNC, and UNC is entitled to judgment as a matter of law. UNC is entitled to summary judgment on Lind's ADEA claim. Accordingly, Defendant's Motion for Summary Judgment is **GRANTED,** and Lind's claim is dismissed with prejudice. Defendant's Motion to Strike Portions of Affidavits is **GRANTED IN PART.** The remaining portions of Defendant's Motion to Strike are **DENIED AS MOOT.** Judgment will be entered by separate document.